McDANIEL et al. v. UNITED STATES.

Circuit Court of Appeals, Fifth Circuit.
March 1, 1928.

No. 5046.

1. Conspiracy &⇒48—In prosecution for conspiracy to import, possess, and sell liquor, evidence defendants navigated liquor boat and accompanied another in attempt to bribe sheriff held to take case to jury (Cr. Code, § 37 [18 USCA § 88]; National Prohibition Act [27 USCA]).

In prosecution under Criminal Code, § 37 (18 USCA § 88), for conspiracy to import, transport, possess, and sell liquor in violation of National Prohibition Act (27 USCA), evidence that one defendant was employed as navigator of boat transporting liquor, and that the other was present when liquor was unloaded, and accompanied another in attempt to bribe sheriff, *held* sufficient to take case to jury.

2. Conspiracy &⇒23—Knowledge of conspiracy by others and sympathy with and approval of its object will not constitute defendant conspirator (Cr. Code, § 37 [18 USCA § 88]).

In prosecution under Criminal Code, § 37 (18 USCA § 88), for conspiracy to import, transport, possess, and sell intoxicating liquor for beverage purposes, in violation of National Prohibition Act (27 USCA), defendant's knowledge that others were in such conspiracy, and his full sympathy with and approval of its object, would not constitute him a conspirator.

3. Criminal law &⇒680(1)—Order of proof is in trial court's discretion.

In criminal case, order of proof is in discretion of trial court.

4. Criminal law &⇒775(4)—Where officers testified to defendant's whereabouts from 11 o'clock till 2, and defendant testified to different place until 12, instruction alibi not accounting for entire time was incompetent was erroneous (Cr. Code, § 37 [18 USCA § 88]).

In prosecution under Criminal Code, § 37 (18 USCA § 88), for conspiracy to violate National Prohibition Act (27 USCA), in which officers testified they followed defendant along road from 11 o'clock till 2 on certain night, and defendant showed he was at dance from 11 o'clock till after midnight, charge that alibi was not complete, unless defendant accounted for entire time officers claimed to have followed him, *held* erroneous.

In Error to the District Court of the United States for the Northern District of Florida; William B. Sheppard, Judge.

W. R. McDaniel and another were convicted of conspiring to import, transport, possess, and sell intoxicating liquor for beverage purposes in violation of the National Prohibition Act, and they bring error. Reversed, with directions as to defendant McDaniel; affirmed as to defendant Palmer.

S. C. Mize, of Gulfport, Miss. (Mize & Mize & Thompson, of Gulfport, Miss., Philip

D. Beall, of Pensacola, Fla., and Paul Carter, of Marianna, Fla., on the brief), for plaintiffs in error.

Fred Cubberly, U. S. Atty., and George Earl Hoffman, Asst. U. S. Atty., both of Pensacola, Fla.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. W. R. McDaniel and Anthony Palmer were convicted as charged in an indictment, brought against them and a number of other defendants under section 37 of the Criminal Code (18 US CA § 88), alleging a conspiracy to import, transport, possess, and sell intoxicating liquor for beverage purposes in violation of the National Prohibition Act (27 USCA).

Peter Martin and Louis Wentzell were included among the other defendants named in the indictment, were convicted at a prior term of court, and on writs of error from this court the sentences imposed upon them were sustained. Martin v. United States (C. C. A.) 17 F.(2d) 973. Martin bought a tract of land in Gulf county, Florida, located on Wetappo creek. Title was taken in Wentzell's name, and under his supervision a camp was established on it, with · houses suitable for concealing and storing liquor. Wetappo creek is navigable and opens into a canal which connects Apalachicola Bay and St. Andrews Bay. ° There was thus afforded a double entrance for boats into and from the Gulf. A boat, which Wentzell claimed to own, made at least one trip into the Gulf, and obtained a large quantity of liquor from another boat outside, which it brought back to the camp. A number of sales were made from time to time until prohibition officers made a raid, in which they seized the boat, which at that time had a considerable supply of liquor on board.

At the time of the raid and seizure, there were present several of those afterwards indicted, including Wentzell, Palmer, and McDaniel. A prohibition agent, named Standau, testified to conversations he had with various defendants after the raid was completed. He said that Wentzell claimed to be the sole owner of the boat and liquor, but Wentzell made no statement tending to connect any defendant other than himself with the offense charged in the indictment. None of the other defendants made any confession or statement implying guilt either of himself or any one else; on the contrary, what they had to say was of an exculpatory nature. The court denied a motion to strike Standau's

testimony relating to conversations with any defendant that it was claimed occurred after the seizure. The government's evidence against Palmer was to the effect that he was regularly employed as navigator of the boat, and navigated it on the trip into the Gulf on which the cargo of liquor was brought to the camp. That evidence was undisputed.

The government's evidence against McDaniel was to the following effect: He was one of those present at the camp when the boat was being unloaded, and when the seizure was made. Before that he accompanied Palmer and his wife and Wentzell in Wentzell's automobile into the adjoining county of Calhoun, and introduced them to Clark, sheriff of that county, at the ice plant in Blountstown. Clark testified that on that occasion McDaniel said he wanted to talk to him, and that at Wentzell's invitation he went with the others in the automobile a distance of about two miles, to a point where they turned off the public road and stopped; that Mrs. Palmer got out of the automobile, and, when she was out of hearing, Wentzell offered a bribe to him for permission to sell liquor in, and transport liquor through, Calhoun County; that he refused to accept the bribe, or to give the permission requested, and that thereupon McDaniel remarked to Wentzell and Palmer that he had told them before they came either that "we" or "you" could not do anything with the witness. On one occasion McDaniel sent a messenger to the camp for liquor, and Wentzell delivered it without requiring payment. On December 31, 1925, McDaniel remained several hours at the camp, left there about 11 o'clock that night, and carried liquor in his automobile to Panama City, about 50 miles away, where he arrived about 3 hours later, or 2 o'clock a. m. The time of his departure from the camp and arrival at Panama City was fixed by two government witnesses, who testified that they followed him in another automobile. McDaniel admitted that he was present at the camp when the load of liquor was seized, and at Blountstown on the occasion testified to by Clark. He explained by saying that he was engaged in the real estate business, and on both occasions was attempting to make a sale of property to Wentzell. He denied the statement attributed to him by Clark, to the effect that he had told Wentzell and Palmer that it would be useless to attempt to bribe Clark, or that he ever discussed the subject of bribery with them. He denied that he had ever sent a messenger to Wentzell's camp for liquor, or that on the night of December 31,

1925, he was at that camp, or during that night carried liquor from there to his home in his automobile, and testified that on that night he was in Panama City, where he lived, attended a dance until after midnight, and then went home. His testimony as to his presence at the dance until after midnight was corroborated by several witnesses.

The trial judge denied motions submitted by each defendant for a directed verdict in his favor, and in the course of his charge stated that the jury might consider whether Mrs. Palmer absented herself during the purported conversation with Sheriff Clark in pursuance of a prearranged plan. After defining conspiracy, he charged that one who knowingly says or does anything to indicate his sympathy with the object and purpose of a conspiracy could properly be convicted as a conspirator, although in other parts of the charge it was stated to be the law that mere association with those engaged in a conspiracy is insufficient to support an inference of guilt. On the question of alibi, a charge was given to the effect that, even though a defendant were "somewhere else a part of the time when the witness said he was following him, if he was not at that place for the full time that the other witness testified he was following him, the alibi would not be complete, and therefore not sufficiently established to controvert the time testified to by the other witness."

Errors are assigned to the refusal of the court to strike Standau's testimony in regard to conversations that occurred after the conspiracy was at an end, to the refusal of the court to direct verdicts of not guilty, and to the giving of the above-stated instructions in its charge to the jury.

Wentzell was the only one of all the defendants who made a confession, and he assumed entire responsibility for any violation of the law. Standau's testimony did not purport to show that any of the other defendants had confessed or made a statement tending to show that any of the codefendants had said or done anything of an incriminating nature after the conspiracy was at an end.

[1] It was not error to refuse to direct a verdict for either of defendants. There was abundant evidence to show that a conspiracy existed, and that several overt acts were committed. Palmer actively participated in that conspiracy, as it is undisputed that he navigated the boat which received the cargo of liquor from another boat in the Gulf, and brought it to the camp. There was also evidence which, if true, was sufficient to au-

thorize the conviction of McDaniel. Clark's testimony alone was enough to show that McDaniel knew of the existence of the conspiracy, and was actively engaged in attempting to put it into effect; besides, the government's evidence tended to show that this defendant was present at the camp for the purpose of assisting in protecting and unloading the cargo of liquor.

[2] It is true, however, that McDaniel's testimony, if believed by the jury, was sufficient to authorize an acquittal. His knowledge that others were in a conspiracy to violate the law, and his full sympathy with and approval of the object of that conspiracy, without more, would not constitute him a conspirator, as would seem to be implied in certain portions of the court's charge. Although other portions of the charge stated the rule correctly, yet the whole of the charge on this particular point was, as it appears to us, liable to confuse the jury We think the charge would have been much better if the word "sympathy" had been left out of it.

[3] The objection urged to the charge of the court with reference to Mrs. Palmer's absenting herself during the conversation with the sheriff was that the corpus delicti should first have been proven. The order of proof is in the discretion of the trial court, and any technical error in that particular was cured before the evidence was closed.

[4] The charge on the subject of alibi clearly related to McDaniel's attempt to prove that he was in Panama City during the time witnesses for the government testified that he was at the camp and on the road. It is true, of course, that an abili must cover the entire time in dispute; but, if McDaniel were in Panama City from 11 o'clock until after midnight on the night in question, it was impossible for him to have been at the camp at 11 o'clock, or to have been followed as he was coming from it until 2 o'clock in the morning. Therefore, if the evidence in his behalf tending to support his claim of alibi were true, the evidence of his presence at the camp and on the road could not possibly have been true. The court's charge was to the effect that the attempt to prove an alibi had failed, and that it was the duty of the jury to accept as true the testimony of the government witnesses.

That charge was, in our opinion, clearly erroneous, and makes it necessary to reverse the judgment as to McDaniel. Palmer could not have been injuriously affected, either by the charge as to the effect of being in sympathy with the object of the conspiracy, or by the charge upon the subject of alibi. His participation, according to the evidence, was active and direct, and did not depend upon the question whether McDaniel was a conspirator, as there were a number of other defendants with whom it was charged that he was acting in concert.

The judgment is affirmed as to Palmer. It is reversed as to McDaniel, with directions to grant him a new trial.