UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry H. CULLEN, III, Defendant-
Appellant.

No. 73–1323.

United States Court of Appeals,
Ninth Circuit.

May 28, 1974.

James R. Moore, (argued), Gregory J. Hobbs, Jr., (argued), of Cooper, White & Cooper, San Francisco, Cal., for defendant-appellant.

James W. Meyers, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., E. Mac Amos, Jr., Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BARNES and TRASK, Circuit Judges, and KELLEHER,* District Judge.

## OPINION

KELLEHER, District Judge:

This is an appeal from a judgment of conviction under a single count of conspiracy to import marihuana in violation of 21 U.S.C. § 963, entered after a jury trial.

The four-count indictment charged appellant and four other persons with acts relating to the importation or distribution of controlled substances. At the conclusion of the Government's case in chief, two of the counts were dismissed as against appellant and co-defendant Williams, with whom appellant was jointly tried. The jury found both the appellant and Williams guilty as charged in the conspiracy count and were unable to reach a verdict on the remaining substantive counts which charged illegal importation of controlled substances; as to these counts a mistrial was declared.

Appellant here contends that there was insufficient evidence to establish his intent to join the conspiracy; that the evidence discloses that he withdrew from the conspiracy; that there was error in admitting as against appellant, certain evidence seized as a result of the search of a vehicle as to which a motion to suppress was denied, and that there was error in the admission of certain testimony by one of the alleged co-conspirators.

The evidence before the jury established clearly that the three co-defendants of appellant had knowingly planned a trip to Mexico in order to obtain a commercial quantity of marihuana for sale in the United States. The agreed plan contemplated that each of appellant's co-defendants was to invest the sum of $5,000. The arrangements agreed upon included the use of two trucks, a boat and the cash investment. One of the co-conspirators had visited the appellant to inquire if he could rent the appellant's Dodge camper; appellant's first response was in the negative. In a subsequent conversation with the co-defendant Williams, with whom he was tried, appellant agreed to allow the use of the camper on the trip to Mexico. Hearsay testimony of one of the co-conspirators established that appellant was informed of the reason why the use of the camper was desired. After gaining this information, the appellant indicated that he desired to go along on the Mexican trip. Appellant agreed to the use of his camper on the promise of one of the co-conspirators to repair and overhaul it. The overhaul, in fact, was done partly at the expense of one of the co-conspirators and partly at appellant's expense, and the camper and appellant thereafter both went to Mexico on the trip.

Before leaving for Mexico, appellant and one of the co-conspirators discussed making room in the camper for the storage of the marihuana, as a result of which the refrigerator located therein was removed in order to make more room. During the trip to Mexico, appellant made inquiry of the co-conspirators as to the manner in which the marihuana was going to be brought back and what its final destination would be. Appellant made a check of the ferry running from Mazatlan to see if there were any immigration checks made when the ferry unloaded at La Paz. Appellant, at the request of one of the co-conspirators, made the necessary arrangements for passage on the ferry of appellant's camper and the other vehicle involved. Two co-conspirators other than appellant left Mazatlan for Guadalajara in appellant's camper; south of that city they obtained the marihuana. Upon their return to Mazatlan appellant informed the

---

* Honorable Robert J. Kelleher, United States District Judge, for the Central District of California, sitting by designation.

co-conspirators when the next ferry was leaving that city and that reservations thereon had been made by him. Two of the co-conspirators and appellant rode in appellant's vehicle back from Mazatlan to Ensenada, each sharing in the driving. A conversation was had between appellant and one of the co-conspirators on this trip concerning where to stow the marihuana in appellant's camper; when some of the marihuana toppled out of a closet in the camper, appellant helped to put it back, and appellant joined in smoking some of the marihuana during the journey.

Upon arrival in Ensenada, appellant refused to ride in the camper for fear of being associated with the contraband. Two of the co-conspirators brought a boat to Ensenada, into which they loaded the marihuana from appellant's camper. Appellant knew that the boat was coming but he did not want to travel on it because he did not wish to get involved in the actual smuggling operation. On the day before the boat containing the marihuana sailed, two of the co-conspirators and appellant crossed the border to the United States in appellant's camper; upon crossing the border the appellant went to the airport and caught a flight to San Francisco.

The marihuana arrived in San Diego by boat and was unloaded therefrom onto appellant's camper. Two of the co-conspirators started out in the camper with the marihuana aboard, and they were stopped at the permanent United States Border Patrol checkpoint near San Clemente, California. A Border Patrol agent, noting that the rear windows of the camper were covered, directed the vehicle to the secondary inspection area where the co-conspirators were informed that it was desired to look inside the camper. One of the co-conspirators stated that the door was jammed and could not be opened, and when the agents left to get some tools, the two co-conspirators sought to escape on the freeway. In the ensuing pursuit by a Border Patrol vehicle, with its red light flashing and its siren sounding, the

camper had to be forced off the road. Thereafter the door of the camper was forced open by a Border Patrol agent in order to search for aliens, and the load of marihuana was there discovered.

Upon this record, the jury had quite sufficient evidence to determine that a conspiracy existed and that appellant was part of it. United States v. Knight, 416 F.2d 1181, 1184 (9th Cir. 1969).

Though circumstantial, the evidence is sufficient to establish the conspiracy. Diaz-Rosendo v. United States, 357 F.2d 124, 129 (9th Cir.) (en banc), cert. denied 385 U.S. 856, 87 S.Ct. 104, 17 L. Ed.2d 83 (1966).

Taking a view of the evidence most favorable to the government, as we must, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we hold that the evidence here was clearly sufficient.

Appellant's claim that he withdrew from the conspiracy so as not to be liable as a member thereof is without substance. The record discloses no more than appellant's efforts to disassociate himself from those patent acts which he thought so notorious as to have disclosed his full connection with the enterprise. The evidence shows far less than necessary to establish appellant's claim of withdrawal from the conspiracy. He stops far short of a disavowal thereof or of any action which would have defeated the purpose of the conspiracy, and he took no definite, decisive and positive steps which showed that his disassociation was sufficient. See United States v. Chester, 407 F.2d 53, 55 (3rd Cir.), cert. denied 394 U.S. 1020, 89 S.Ct. 1642, 23 L.Ed.2d 45 (1969).

Appellant also claims that the marihuana found in his camper and seized as evidence at the permanent United States Border Patrol checkpoint should have been suppressed under Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Almeida-Sanchez does not control the decision in this case. In Bowen

**548**

v. United States, 500 F.2d 960, filed May 9, 1974, we held that *Almeida-Sanchez* does in fact apply to fixed checkpoint searches unless the record establishes that the checkpoint is the "functional equivalent" of a border crossing. No such record was made here. However, *Bowen* also held that its rule will be applied prospectively only from June 21, 1973, the date of the decision in *Almeida-Sanchez*. The search here was prior to that date. Finally, the evidence here clearly discloses probable cause for the search.

■ In any event, we have held that it is constitutionally permissible for Border Patrol agents to detain persons briefly under similar circumstances for purposes of limited inquiry in the course of routine investigation, even absent the special power existing at or near the border. United States v. Oswald, 441 F.2d 44, 46 (9th Cir. 1971). *Almeida-Sanchez* does not disturb *Oswald*.

■ The fact that the rear windows of the camper were covered, the doors could not be opened, and the two co-conspirators fled and were thereafter apprehended, was sufficient to establish indisputable probable cause for this search. See United States v. Roberts, 470 F.2d 858 (9th Cir. 1972).

■ There is no substance to appellant's claim of error in the admission against him of the hearsay statements of his co-conspirators. The statements were clearly in furtherance of the conspiracy and hence admissible. Phillips v. United States, 356 F.2d 297, 303 (9th Cir. 1965), cert. denied sub nom. Walker v. United States, 384 U.S. 952, 86 S. Ct. 1573, 16 L.Ed.2d 548 (1966). Clearly, the statements were made during the pendency of the conspiracy, and there was ample independent evidence to connect the declarant with appellant therewith. Hence, the foundation for admissibility of the hearsay evidence was sufficient. White v. United States, 394 F. 2d 49 (9th Cir. 1968); Carbo v. United States, 314 F.2d 718, 735–736 (9th Cir. 1963), cert. denied sub nom. Sica v. United States, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964).

We have considered this appeal as properly before us despite appellee's claim of failure on appellant's part to file his notice of appeal in time to invoke appellate jurisdiction. In doing so we accept appellant's version of timely filing despite some confusion of a clerical nature.

Having fully considered the appeal, the Judgment is

Affirmed.