UNITED STATES of America, Plaintiff-Appellee,

v.

William E. KLEIN, Jr., Defendant-Appellant.

Nos. 75–2023, 76–3702.

United States Court of Appeals, Fifth Circuit.

Oct. 14, 1977.

Robyn Greene, Miami, Fla. (Court-Appointed), Marc Cooper, Miami, Fla., for Klein.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., Mark S. Geraghty, Crim. Div., Narcotic & Drug Sec., Dept. of Justice, Washington, D. C., Jamie L. Whitten, Asst. U. S. Atty., Coral Gables, Fla., for plaintiff-appellee in No. 75–2023.

Jack V. Eskenazi, U. S. Atty., Karen L. Atkinson, Asst. U. S. Atty., Miami, Fla., Jamie L. Whitten, Asst. U. S. Atty., Coral Gables, Fla., for plaintiff-appellee in No. 76–3702.

Before WISDOM, SIMPSON and TJOFLAT, Circuit Judges.

SIMPSON, Circuit Judge:

William Klein was convicted on charges of conspiracy, distribution, and possession arising out of a scheme to import cocaine from Colombia to the United States. In this appeal he makes several allegations of error, all of which we find to be without merit. We thus affirm his conviction on all counts. Two points warrant discussion.

## I. THE FACTS

Eli Hellman and William Klein were indicted on three counts:[1] (1) conspiracy to import one kilogram of cocaine into the United States, in violation of Title 21, U.S.C. § 952(a); (2) distribution of 6.5 grams of cocaine, in violation of Title 21, U.S.C. § 841(a)(1); and (3) possession of 6.5 grams of cocaine with intent to distribute, in violation of Title 21, U.S.C. § 841(a)(1). The facts giving rise to these indictments as brought out at Klein's trial are as follows.

On November 3, 1974, Klein called an acquaintance, John Paul Bommarito, to discuss a plan to bring cocaine into the United States. Bommarito was an underworld figure, had been convicted of four separate narcotics offenses, and, unknown to Klein, was a government informant. At Bommarito's suggestion, the two met later that afternoon at Bommarito's hotel. Klein brought his friend Hellman to the meeting. According to Bommarito, Hellman stated that he knew how to liquify cocaine, thus allowing it to be smuggled into the country in liquor bottles. Hellman also stated that he had a good connection to obtain cocaine "down there". Klein stated that he and

---

1. A third person, Jerry Merolis, was indicted on the conspiracy count only, but was never brought to trial.

Hellman had contacted Bommarito because they needed financial backing to carry off their scheme. At this meeting, Bommarito asked if the two could furnish a sample of cocaine. Hellman and Klein agreed to deliver one quarter of an ounce of the substance, for which Bommarito paid $350.

On November 5, 1974, two days later, Bommarito had a dinner party in his hotel suite, attended by Klein and his date, Hellman and his wife, and two undercover agents, Gillis and Degaglia. The agents posed as large-scale narcotics operators employed by the underworld. After the men at the party discussed plans for smuggling cocaine into the country, Bommarito asked about the sample he had requested. Hellman then produced a small bag of cocaine which was "checked out" by agent Gillis.

On November 8, 1974, at Degaglia's request, Klein, Hellman, Degaglia and Gillis met to discuss further details of the plan. The agents, borrowing from the then-popular film "The Godfather", explained that they had to go up north to see their "father" and discuss the plan with him. One week later, on November 15, the agents again met with Klein and Hellman and stated that their "father" had given approval for someone to go to Colombia to purchase a kilo of cocaine for $9,000. Degaglia stated that Gillis would accompany Hellman to Colombia to acquire the drug and that travel expenses would be paid by the "father". Later that day, Gillis phoned Hellman to learn whether Hellman had been in touch with his contact in Colombia. Hellman stated that he had called "Jerry" and that "Jerry had the cocaine and all we had to do was go down there".

Gillis and Hellman traveled to Cali, Colombia, on November 18, 1974, where they contacted Jerry. After much negotiation concerning the price of the kilo and the manner of payment, the parties were un-able to agree and the deal fell through. Gillis and Hellman took the next flight back to the United States.

## II. PROCEDURAL HISTORY

The joint trial of Klein and Hellman has complicated the procedural history of this case. On the first day of the trial, counsel for Hellman, while in the corridor outside the courtroom, loudly berated the Assistant United States Attorney who was handling the prosecution. Because of this incident, Klein moved for a severance. The district court denied Klein's motion after holding a hearing to determine whether any juror had witnessed the incident [2] and having Hellman's counsel examined by a court-appointed psychiatrist. Hellman was represented by the same lawyer throughout the trial.

The jury returned a verdict of guilty on all counts against both Klein and Hellman. Klein was sentenced to five years confinement on the conspiracy count and five years confinement on each of the substantive counts, all sentences to run concurrently and to be followed by concurrent three year special parole terms. He filed a timely notice of appeal from the judgment and sentence of the district court.

Hellman filed a motion for a new trial, alleging primarily that he did not receive effective assistance of counsel at trial. After an evidentiary hearing, the district court granted Hellman's motion on the basis of a record which graphically detailed the irrational and unprofessional conduct of Hellman's counsel.

On the basis of Hellman's successful motion, Klein asked this Court to remand his case to the district court for consideration of his motion for a new trial. In an unpublished order, we granted the motion to remand. After a hearing, the district court

2. One juror who was in a position to have heard the altercation but who denied having heard it was dismissed by the district court. The court also questioned two jurors who may have had a cursory contact with Hellman's counsel before entering the courtroom, and was satisfied that such contacts did not war-rant dismissal. After conducting the hearing, the court asked if counsel were satisfied with the jury "as it is now composed". Klein's counsel responded that he was, "under the circumstances"; Hellman's counsel responded, characteristically, "No, Your Honor, but I am stuck with it". See T.R. 74–81, 82–93.

denied Klein's motion for a new trial, and Klein once again appealed to this Court. His two appeals have been consolidated and we consider them as one.

In the meantime, Hellman was convicted on all three counts by the jury at his second trial. He appealed and we have recently reversed his conviction following a government confession of error because of an erroneous instruction given by the district court. *United States v. Hellman*, 560 F.2d 1235 (5th Cir. 1977). As of this date, Hellman has not been retried for a third time.

Klein raises several points on appeal. We have considered each allegation of error and find none to be meritorious.[3] Two points require discussion: (1) whether the district court erred in ruling that if Klein took the stand he could be impeached with evidence of a prior jury verdict of guilty where no judgment or sentence had been entered on that verdict, and (2) whether the district court erred in denying Klein's motion for a new trial after it had granted a new trial to Hellman, an alleged co-conspirator.

## III. IMPEACHMENT BY A PRIOR JURY VERDICT

■ The trial in the instant case began on March 4, 1975. Earlier the same day the jury in another case before a different judge returned a verdict of guilty against Klein on a separate indictment charging him with conspiracy to import cocaine and marijuana.[4] No judgment or sentence was entered on that jury verdict during the pendency of the instant trial. When Klein indicated, against the advice of counsel, that he wished to testify in his own defense, his counsel asked the district court to rule on whether Klein could be impeached with evidence of this jury verdict if he took the stand. The court, citing *United States v. Franicevich*, 471 F.2d 427 (5th Cir. 1973), noted that a witness can be impeached with evidence of a prior conviction even when an appeal of that conviction is pending. By analogy, the court reasoned, a witness could be impeached with evidence of a guilty verdict where no judgment had been entered, as long as he has the opportunity to "show the status of the matter" in mitigation. (T.R. 414) As a result of this ruling, Klein did not take the stand. He now argues that the court's ruling constitutes reversible error. We are not persuaded by his argument.

"It is a well settled rule of law that only previous convictions, and not previous acts of misconduct not resulting in conviction, can be used for impeachment purposes". *United States v. Turner*, 497 F.2d 406, 407 (10th Cir. 1974), cert. denied 423 U.S. 848, 96 S.Ct. 90, 46, L.Ed.2d 71 (1975). Accord: *Brown v. Coating Specialists, Inc.*, 465 F.2d 340 (5th Cir. 1972); *United States v. Davenport*, 449 F.2d 696 (5th Cir. 1971). This rule has spawned controversy where the "conviction" sought to be used for impeachment purposes lacks finality, either because judgment and sentence have not yet been entered on a jury verdict or guilty plea, or because an appeal is pending. Until the Federal Rules of Evidence were promulgated, the Circuits were split on the issue of

---

3. Klein's first brief, prepared by one of his trial attorneys, alleged three errors by the district court: (1) denial of Klein's motion for severance after counsel for both Klein and Hellman had requested a severance, (2) admitting the testimony of a confidential informant whose reliability was questionable, and (3) continuing the trial after Hellman's counsel's misconduct and alleged abuse of Klein. A second brief prepared by Klein *pro se* alleged three additional errors: (4) insufficiency of the evidence as to the conspiracy charge, (5) denial of a bill of particulars, and (6) an erroneous instruction regarding constructive possession. During the pendency of this appeal, Klein's counsel withdrew from the case. We appointed another counsel who filed a third brief in appealing the

denial of Klein's motion for a new trial. That brief contained three final allegations of error: (7) a ruling that Klein could be impeached with evidence of a prior jury verdict of guilty where no judgment or sentence had been entered on the verdict, (8) denial of Klein's motion for a new trial, and (9) imposition of sentence for both possession and distribution of cocaine. We find that none of these points, with the exception of 7 and 8, warrant discussion.

4. The verdict returned on March 4, 1975, was in a case tried before then District Judge Peter T. Fay. The instant case was tried before District Judge C. Clyde Atkins.

the admissibility of convictions on appeal at the time of the subsequent trial. Courts holding against admission reasoned that "[i]f the judgment of conviction is later reversed, the defendant has suffered, unjustly and irreparably, the prejudice, if any, caused by disclosure of the former conviction". *Campbell v. United States*, 85 U.S. App.D.C. 133, 135, 176 F.2d 45, 47 (1949). On the other hand, as we explained in *United States v. Franicevich, supra*, at 429:

> We apprehend the better rule in such a situation to be that the prior conviction, yet unreversed, may be shown by way of impeachment. The witness may, of course, explain to the extent of showing that the conviction is pending on appeal, and the jury may then give it such weight as it wishes, its prerogative in any case.

Our position has since been adopted by the Federal Rules of Evidence, which provide as follows:

> The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

Fed.R.Evid. 609(e).

It follows that if a jury can comprehend that a prior conviction on appeal may be reversed, it can also comprehend that a jury verdict of guilty may be set aside upon a motion for a judgment of acquittal, pursuant to Fed.R.Crim.P. 29(c), a motion for a new trial, pursuant to Fed.R.Crim.P. 33, or a motion in arrest of judgment, pursuant to Fed.R.Crim.P. 34.[5] Thus, we can perceive no logical distinction, for purposes of impeachment, between a conviction on appeal and a jury verdict of guilty where judgment and sentence have not yet been entered, so long as the defendant has the opportunity to explain to the jury the legal status of the "conviction".

We hold only that a verdict of guilty where judgment and sentence have not been entered is admissible for impeachment purposes where it otherwise meets the requirements of Fed.R.Evid. 609. In so holding, we do not suggest that a guilty verdict is for all purposes the equivalent of a conviction or that a mere plea of guilty may in all cases be used for impeachment purposes.

We recognize the general rule that "it takes the judgment of the court on the plea or verdict to constitute a conviction". *Crawford v. United States*, 41 F.2d 979, 980 (D.C.Cir. 1930). *See also Hill v. United States ex rel. Wampler*, 298 U.S. 460, 464, 56 S.Ct. 760, 762, 80 L.Ed. 1283 (1936). Indeed, the Federal Rules of Criminal Procedure require that "[a] judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence . . . The judgment shall be signed by the judge and entered by the clerk". Fed.R.Crim.P. 32(b)(1).

■ In some contexts, such as where prior conviction of a specific offense is an element of the crime charged,[6] the distinc-

---

**5.** Of course, the jury need not be told of these possible consequences if they are no more than abstract contingencies. Counsel must have actually filed such motions or in good faith intend to before he can describe them to the jury in mitigation. We are not unmindful of the caution expressed by Judge Goldberg in his dissent in *Franicevich, supra*, 471 F.2d at 430: "Use of any prior conviction 'for impeachment only' is fraught with danger—the most obvious hazard being that jurors may not be able to perform the mental gymnastics needed if they are to consider the prior conviction only for impeaching the defendant's testimony and not for proof that his character is criminal". Established law, now embodied in the Federal Rules of Evidence, has rejected the premise that jurors cannot "perform the mental gymnastics" of considering such evidence in so narrow a context. We rely on cautionary instructions by the trial judge, vigorous argument by counsel, and the integrity of jurors to assure that evidence of prior convictions is not improperly construed. Given the settled nature of the law as to the admissibility of certain prior convictions, we find no added degree of prejudice in using a conviction which "may itself soon become a nullity", *id.*, if the jury is clearly and accurately so informed.

**6.** In *Schooley v. United States*, 4 F.2d 767 (8th Cir. 1925), for example, the defendant was indicted for possession of intoxicating liquor, having twice been convicted of similar offenses. Prior conviction was an "essential element" of the offence, which carried a more severe penalty than could be imposed on a first offender. The Court held the indictment invalid because it averred only that the defendant

tion between verdict and conviction is quintessential. Where the guilty verdict is introduced for impeachment purposes, however, it can be distinguished from a conviction only on the basis of a procedural requirement which is "nothing more than a ministerial act". *United States v. Canaday*, 466 F.2d 1191 (9th Cir. 1972). There is "no significant difference between the jury's finding of guilt and the entry of judgment thereon as far as probative value for impeachment purposes". *United States v. Rose*, 526 F.2d 745, 747 (8th Cir. 1975), cert. denied 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976). A jury's verdict of guilty prior to entry of judgment is no less final than a conviction during the pendency of an appeal. In both cases the finding of guilt should be competent as impeachment evidence subject to an explanation by counsel that the finding may be set aside at a later date.

By this holding we intimate no view as to the admissibility for impeachment purposes of pleas of guilty standing alone without a judgment of conviction and imposition of sentence. At least one circuit has held that "a guilty plea is a confession of guilt and amounts to a conviction" for impeachment purposes, *United States v. Turner, supra*, 497 F.2d at 407, while two circuits have held otherwise. *United States v. Lee*, 166 U.S. App.D.C. 67, 509 F.2d 405 (1974); *United States v. Semensohn*, 421 F.2d 1206 (2d Cir. 1970).

We emphasize that our holding here leaves open the question of the admission of proof of guilty pleas in similar circumstances. A plea of guilty is distinguishable from a jury's verdict of guilty and should be separately considered. A jury does not deliberate until it has been presented with evidence upon which a finding of guilt beyond a reasonable doubt can

be based; a guilty plea may lack the evidentiary basis which gives the verdict at least a surface guarantee of trustworthiness. Although both a plea of guilty and a verdict of guilty may be altered before guilt is adjudged, the verdict carries a greater assurance of finality. Because the judgment of a jury is favored in our law, a court may not lightly disturb a jury's verdict. On the other hand, the rule allowing a defendant, upon leave of court, to withdraw a plea of guilty before sentence is imposed "should be construed liberally in favor of the accused". *United States v. Presley*, 478 F.2d 163, 166 (5th Cir. 1973). We point out these distinctions not to forecast our decision in a future case but simply to emphasize that we do not decide today whether guilty pleas prior to judgment and sentence are admissible as impeachment evidence.

The trial court did not err when it held that evidence of the prior verdict of guilty against Klein was admissible to impeach his credibility if he elected to testify.

## IV. THE CO–CONSPIRATOR ISSUE

Klein was indicted along with Eli Hellman and Jerry Merolis for conspiracy to import cocaine into the United States. For reasons which do not appear in the record, only Klein and Hellman were prosecuted. Merolis was never brought to trial and did not testify at Klein's trial. Hellman, the only co-conspirator tried along with Klein, was granted a new trial by the district court; Klein's motion for a new trial was denied. Klein now argues that by virtue of rules peculiar to the co-conspirator situation, his motion for a new trial should have been granted because a similar motion by Hellman was granted. Under the circum-

had entered a plea of guilty to the prior similar offense: "there can be no conviction until the plea or verdict of guilty is followed by judgment and sentence". Id. at 769. Similarly, the indictment in *United States v. Dotson*, 555 F.2d 134 (5th Cir. 1977), charged violations of two federal statutes under which prior conviction of a felony was an element of the offense. 18

U.S.C. §§ 922(a)(6) and 922(h). But after Dotson had entered a plea of nolo contendere to the prior charge, the judge in that case had specifically withheld any adjudication of guilt. In this context we held that the trial court correctly dismissed the indictment which charged violations of 18 U.S.C. §§ 922(a)(6) and 922(h).

stances of this case, we cannot agree with this contention.[7]

"This Court has followed the general rule that the conviction of only one defendant in a conspiracy prosecution will not be upheld if all other alleged co-conspirators are acquitted. The reason for the rule is obvious: at least two persons must join in an unlawful enterprise in order for a conspiracy to exist". *United States v. Goodwin*, 492 F.2d 1141, 1144 (5th Cir. 1974) (citations omitted). We have also held that "when the conviction of all the conspirators except one is reversed, the conviction of that one should also be reversed, since, in conspiracy cases, at least two must be convicted or none. Otherwise it might well be that the sole convicted defendant might be the only one ever convicted in violation of this rule". *Cofer v. United States*, 37 F.2d 677, 680 (5th Cir. 1930). Klein asks that we extend these rules to the situation where all co-conspirators but one are granted new trials. Cf. *Klein v. United States*, 472 F.2d 847, 850 (9th Cir. 1973). This case, however, does not present such a situation.

"We have held that a person can be convicted of conspiring with persons whose names are unknown so long as the indictment asserts that such other persons exist and the evidence supports their existence. *United States v. Goodwin*, 492 F.2d 1141, 1144 (5th Cir. 1974); *Jenkins v. United States*, 253 F.2d 710 (5th Cir. 1958). This is true even when co-defendants are known and not prosecuted. *United States v. Cabr-*

era, 447 F.2d 956 (5th Cir. 1971); *Rosecrans v. United States*, 378 F.2d 561 (5th Cir. 1967)". *United States v. Lance*, 536 F.2d 1065, 1068 (5th Cir. 1976). Here, the indictment named Jerry Merolis as a co-conspirator.[8] If the evidence at Klein's trial supported the assertion that Merolis was a member of the conspiracy, Klein's conviction can stand regardless of the past or future disposition of Hellman's case. Cf. *United States v. Gardner*, 475 F.2d 1273, 1277 (9th Cir. 1973), cert. denied, 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70.

■ Sufficient evidence was adduced at Klein's trial for the jury to have found that a person whose name phonetically matched that of Jerry Merolis was a member of the alleged conspiracy to import cocaine.[9] Hellman told Gillis that he had called his friend Jerry in Colombia and that "Jerry had the cocaine and all we had to do was go down there". T.R. 322. In a tape recorded telephone conversation between Gillis and Hellman on the same day, Hellman talked about going to Colombia with Gillis to receive a delivery from Jerry. T.R. 328ff. Gillis testified in detail about his trip to Cali, Colombia, with Hellman, during which they met with Jerry and negotiated for several hours with regard to a cocaine deal. At one point, according to Gillis, Hellman and Jerry went to Jerry's brother's house to examine some cocaine. After four hours, Hellman returned alone with a small vial of cocaine.[10]

---

7. Although Hellman was later convicted, following the district court's grant of a new trial, that conviction, as delineated *supra*, Part II, has also now been set aside, following the government's confession of error on appeal, 560 F.2d 1235. The net result is that the case has resumed its identical former posture, that is, with Klein standing convicted and Hellman awaiting a new trial.

8. The indictment in this case alleged that Klein conspired with Hellman, Merolis, and "diverse [sic] other persons whose names are to the Grand Jury unknown". Such an allegation will save the conviction of a single conspirator only when "the evidence supports such an assertion". *United States v. Goodwin, supra*, 492 F.2d at 1144. Cf. *Rosecrans v. United States*, 378 F.2d 561, 567 (5th Cir. 1967). Here, however, no evidence was introduced to support

the existence of these "diverse other persons", much less their participation in a conspiracy.

9. The name "Jerry Merolis" does not appear in the trial transcript. There are numerous references to a man named Jerry who identified himself to agent Gillis as Jerry "Moralez", perhaps the court reporter's phonetic rendering of Merolis. Gillis' testimony makes clear that he was familiar only with the pronunciation of Jerry's last name, not its spelling. T.R. 371.

10. Even if there is no individual named Jerry Merolis, Klein's conspiracy conviction could be upheld because the acts proved support the inference that another person was involved. See *Pritchard v. United States*, 181 F.2d 326, 330–31 (6th Cir. 1950), aff'd, 339 U.S. 974, 70 S.Ct. 1029, 94 L.Ed. 1380. The conspiracy was

Without disputing the evidence of Merolis' involvement, Klein argues that Merolis did not share the common object of importing cocaine into the United States but rather "was an arms-length supplier of cocaine to an alleged member of the conspiracy . . . ." (Third Brief of Appellant at 18). This contention is without merit. In *United States v. Mendez*, 496 F.2d 128 (5th Cir. 1974), we stated the following rules:

No formal agreement between the parties is essential to the formation of a conspiracy, for the agreement may be shown by concerted action, all the parties working together understandingly with a single design for the accomplishment of a common purpose. *Beland v. United States*, 5 Cir. 1938, 100 F.2d 289, cert. denied, 1939, 306 U.S. 636, 59 S.Ct. 485, 83 L.Ed. 1037. However, mere knowledge, acquiescence or approval without cooperation or agreement to cooperate is not enough to constitute one a party to a conspiracy. *McDaniel v. United States*, 5 Cir. 1928, 24 F.2d 303. In order to fasten guilt on one accused of being a co-conspirator it is necessary to prove that he actively participated in the conspiracy charged. *Young v. United States*, 5 Cir.

1931, 48 F.2d 26. Mere association with conspirators is not enough to establish participation in the conspiracy. *Roberts v. United States*, 5 Cir. 1969, 416 F.2d 1216. Id. at 130.

The evidence amply supports a finding that Merolis was familiar with and actively cooperated to achieve the object of the conspiracy. Merolis knew that Hellman and Gillis were from America and did not intend to remain in Colombia.[11] It is thus fair to infer that he expected the cocaine to be taken out of Colombia. Furthermore, Merolis knew of the plan to convert the cocaine powder into liquid, which would serve no purpose except to facilitate its passage through customs.[12] This knowledge, considered in light of Merolis' negotiations with Gillis and Hellman and his furnishing a sample of cocaine to Hellman, refutes the notion that Merolis was an "arms-length supplier" and not a member of the conspiracy. Cf. *McDaniel v. United States*, 24 F.2d 303 (5th Cir. 1928). On the basis of the evidence adduced, the jury was entitled to find that Klein and Merolis participated in a single conspiracy to import cocaine.[13] See *Sigers v. United States*, 321

hatched, in part, because Hellman had a source of cocaine in Colombia. There is direct evidence that Hellman contacted his source, Jerry, before traveling to Colombia, and it may be inferred that Hellman and Gillis would not have made the trip unless they were reasonably assured of contacting someone from whom the cocaine could be purchased. Furthermore, there is no evidence to contradict Gillis' testimony that he and Hellman attempted to negotiate the purchase with a third person, Jerry, and someone had to have provided Hellman with the cocaine that he brought back to Gillis. "It is the rule that the existence of a conspiracy may be established by inferences from circumstantial evidence". *Id.* at 331.

11. In a telephone conversation with Gillis, Hellman stated, "Jerry was just up in Miami looking for me last week". T.R. 330. Also, Gillis testified that while in Colombia, he told Jerry "that my man who was here in the hotel would have to come up to the room since on subsequent trips to South America only Mr. Hellman would be going down, I would not, and my man would be conducting business for me". T.R. 373.

12. Gillis testified that as he, Hellman, and Merolis were leaving Merolis' apartment in Colom-

bia, "Jerry came up on my side and said that he could supply me with large amounts of cocaine paste if I so desired. Mr. Hellman answered for me. He stated that we did not want cocaine paste because he could not convert it or put it into the solution. We needed the powder form of the cocaine to put into the solution". T.R. 371.

13. Klein notes that one of the grounds for granting Hellman a new trial was his alleged incompetence at the time of the offense and at the time of trial. If Hellman is eventually acquitted on the basis of his incapacity to commit the crime, then Klein's only links with Merolis will be through government agents. In *Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965), we held that "there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy". This rule is inapplicable in the instant case because assuming the incapacity of Hellman and the government agents, Merolis was involved. "[A] conspiracy may be proved even though the link connecting many of the activities of the conspirators is a Government informer". *Sigers v. United States, supra*, 321 F.2d at 848.

**1244**

F.2d 843 (5th Cir. 1963); *Poliafico v. United States,* 237 F.2d 97 (6th Cir. 1956), cert. denied 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957).

Because of co-conspirator Merolis, whose participation was alleged in the indictment and is supported by evidence adduced at the trial, Klein's conspiracy conviction does not depend on a final adjudication of Hellman's guilt. Hellman's successful motion for a new trial, the reversal of his second conviction, and even a possible future acquittal are irrelevant to Klein's conviction because the evidence supports a finding that Klein conspired with Merolis. We hold that the district court did not err in refusing to grant Klein's motion for a new trial.

The judgment of conviction appealed from is accordingly

AFFIRMED.