**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lance Louis SMITH, Defendant-Appellant.**

No. 79–1576.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 15, 1980.

Decided July 22, 1980.

J. Frank McCabe, San Francisco, Cal., for defendant-appellant.

John C. Gibbons, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before DUNIWAY and ANDERSON, Circuit Judges, and BONSAL,* District Judge.

DUNIWAY, Circuit Judge:

Lance Louis Smith appeals from a judgment of conviction of conspiracy to violate the civil rights of one Eggers in violation of 18 U.S.C. § 241. We affirm.

## I. *Facts.*

Smith, Bailey, his co-defendant, and one Namahoe, an unindicted co-conspirator, conspired to murder Eggers to prevent Eggers from acting as an informer and testifying in a federal criminal case. On March 13, 1979, Smith, Bailey, Eggers and two others were arrested in San Francisco for burglary of a post office. Eggers became an informant in that case and was given immunity from prosecution in return for his testimony. However, the fact that Eggers was an informant was not disclosed until April 5, 1979. Meanwhile, Bailey and Namahoe were in jail in Idaho and Bailey recruited Namahoe to kill Eggers, whom Bailey suspected of being an informant. He offered to bail Namahoe out of jail and to pay him ten thousand dollars to do the job. On March 24, 1979, Bailey and his wife put up Namahoe's bail and took Namahoe to stay with them in Boise. Bailey bought Namahoe mace and gloves and a car and the two of them procured a lead pipe. Bailey also provided Namahoe with five hundred dollars and a note containing several telephone numbers including that of Smith. On March 30, Namahoe left Idaho for South Lake Tahoe.

Namahoe arranged to meet Smith at 11:00 a. m. on March 31, but he missed the meeting and instead met Mary Hylander, Bailey's sister. She showed him Eggers' house at South Lake Tahoe. Later, Smith met Namahoe at Hylander's house. Smith said he could arrange for a place for Namahoe to stay, provide him with a gun or

* The Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation.

handcuffs and help him fix his car. Smith showed Namahoe Eggers' house and provided him with a description and a sketch of Eggers. Namahoe told Smith that he would need help getting rid of the body and Smith responded that he had a friend with a boat.

The following day, a man called Namahoe and said Smith could not fix the car. Namahoe also learned that Smith had returned to his home in Colfax, California, without providing Namahoe with the help he had promised. Namahoe became nervous about killing Eggers and went to the postal inspectors and offered to inform on Smith and Bailey.

Later, in a tape-recorded telephone conversation, Namahoe explained to Smith his plans of "hitting" Eggers. Smith responded "all right." Again during the taped conversation, Namahoe asked for a gun and Smith responded "Okay."

## II. *Applicability of Section 241.*

Smith claims that he was improperly prosecuted and convicted under 18 U.S.C. § 241 because the conduct involved was not an offense under that section and because a more specific statute exists under which he could have been prosecuted. We reject each of these arguments.

Section 241 states in relevant part:

If two or more persons conspire to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having exercised the same . . .

They shall be fined . . . or imprisoned. . . .

The indictment described the "right or privilege" of Eggers that was involved as:

the right and privilege to give information to the proper authorities concerning violations of the laws of the United States, and the right and privilege to be a witness in a judicial proceeding in the United States District Court in the case of *United States v. Samuel Bailey, et al.*, Criminal No. 79-0036SAW, Northern District of California.

Smith argues that this is not a "right or privilege secured . . . by the Constitution or laws of the United States" within the meaning of § 241. We do not agree.

The Supreme Court in *United States v. Price*, 1965, 383 U.S. 787, 800, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267, gave the language of § 241 a very broad sweep:

The language of § 241 is plain and unlimited. . . . [I]ts language embraces *all* of the rights and privileges secured to citizens by *all* of the Constitution and *all* of the laws of the United States.

(emphasis in original).

■ The right of a person to be a witness in a federal court or other federal proceeding is well within the broad protection of § 241. *Foss v. United States*, 9 Cir., 1920, 266 F. 881; *United States v. Pacelli*, 2 Cir., 1974, 491 F.2d 1108, 1113–1114. So is the right to inform federal officials of violations of federal laws. *Motes v. United States*, 1900, 178 U.S. 458, 462–463, 20 S.Ct. 993, 994–995, 44 L.Ed. 1150; *In re Quarles*, 1895, 158 U.S. 532, 537–538, 15 S.Ct. 959, 961, 39 L.Ed. 1080.

Smith also maintains that prosecution under § 241 was improper because 18 U.S.C. § 1503 is a more specific statute covering the conduct for which he was prosecuted. He claims that he should have been prosecuted for a conspiracy (18 U.S.C. § 371) to violate § 1503. Section 1503 states in relevant part:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States . . . or injures any party or witness in his person or property on account of his attending or having attended such court . . . or on account of his testifying or having testified to any matter pending therein, . . . shall be fined not more than $5,000 or imprisoned not more than five years or both.

■ Smith is right in stating that when two statutes deal with the same offense the

specific statute will be deemed controlling over the general statute. *See Conerly v. United States*, 9 Cir., 1965, 350 F.2d 679, 681–682. However, in this case the two statutes do not deal with the same offense: § 1503 defines a substantive offense; § 241 is a conspiracy statute, *United States v. Price, supra*, 383 U.S. at 796, 86 S.Ct. at 1158. Smith was charged with conspiracy. The fact that he could also have been charged with a substantive offense (§ 1503) as an individual does not preclude prosecution under § 241. Each section describes a distinct criminal act.

### III. *Admissibility of Evidence of Telephone Calls.*

During cross-examination of Smith, the prosecutor established that Smith had received calls from Bailey at a pay telephone when Bailey wanted to discuss "something private." Over defense counsel's objection, the prosecutor established that "something private" meant something "in the field of burglary or something of that sort." The trial judge determined that this evidence, while not admissible to show Smith's character, was admissible "For purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Under F.R.Evid. Rule 404(b). Smith claims that the prejudicial effect of the evidence outweighed its probative value and that, therefore, it ought not to have been let in. *See* Notes of Advisory Committee on Proposed Rules, F.R.Evid. 404, Note to Subdivision (b). We agree with the determination of the trial judge who has wide discretion in balancing the prejudicial and probative effects of evidence. *See United States v. McDonald*, 9 Cir., 1978, 576 F.2d 1350, 1356. The evidence admitted here tended to show that Smith and Bailey discussed illegal activities on a pay telephone to avoid possible wiretaps. It showed a history of conducting illegal concerted action in this manner.

Although we have recognized that "evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative val-

ue," *United States v. Back*, 9 Cir., 1979, 588 F.2d 1283, 1287, the evidence involved here had very little prejudicial potential. Smith testified on direct examination that on March 23, Bailey called Smith at his home and Smith returned his call from a pay telephone. Smith also testified on direct examination that he had been convicted, along with Bailey, in the San Francisco burglary case. Smith's testimony on direct examination was sufficient to open the subjects on cross-examination. *See United States v. Sturgis*, 9 Cir., 1978, 578 F.2d 1296, 1300–1301. Thus further evidence of involvement with Bailey in burglary-related discussions was not highly prejudicial to Smith.

The probative value of the evidence, however, was significant because it suggested the method, use of the pay telephone, by which Smith and Bailey might have conspired to murder Eggers, the same that they had previously used to conspire to conduct other illegal activity. *See United States v. Higuchi*, 9 Cir., 1971, 437 F.2d 835, 838. The trial judge did not abuse his discretion in admitting the evidence in question.

### IV. *Use of Verdict of Guilty for Impeachment.*

On cross-examination, Smith was impeached by use of a prior verdict of guilty in a felony case. He argues that the trial court erred in permitting that verdict to be used because, in the prior case, a motion under F.R.Crim.P. 29 was pending and judgment of conviction and sentence had not yet been pronounced.

The general rule is that it is the judgment, not the verdict, that is the "conviction." *United States v. Klein*, 5 Cir., 1977, 560 F.2d 1236, 1240. However, we and other circuits have held that, when a conviction of felony is used to impeach (F.R.Ev. 609), a verdict of conviction is just as relevant as a judgment of conviction. Such a verdict may be so used before judgment upon it is entered. *United States v. Canaday*, 9 Cir., 1972, 466 F.2d 1191, 1192; *United States v. Duncan*, 4 Cir., 1979, 598

F.2d 839, 864–865; *United States v. Klein, supra*, 560 F.2d at 1239–1241; *United States v. Rose*, 8 Cir., 1975, 526 F.2d 745, 747. If a judgment has been entered on the verdict and an appeal has been taken, the conviction can still be used to impeach, even though the judgment is not final. F.R. Ev. 609(e); *United States v. Allen*, 9 Cir., 1972, 457 F.2d 1361, 1363. There is no similar provision in the Federal Rules of Evidence regarding the pendency of a motion under F.R.Crim.P. 29 or other similar motions, but we think that the result should be the same, *United States v. Klein, supra*, 560 F.2d at 1240, and we so hold. When a conviction is the subject of such a pending motion, that fact, like the pendency of an appeal, can be shown to the jury.

### V. *Declarations of Co-conspirators.*

During Namahoe's testimony the government played several tape recordings of conversations between Namahoe and Bailey which occurred between April 2 and April 4 after Namahoe had begun cooperating with the postal authorities. The tapes were made with the knowledge and consent of Namahoe but without the knowledge of Bailey. Bailey did not testify at trial, but his statements in these conversations were admitted as declarations of a co-conspirator. Smith claims error, arguing that the conspiracy had terminated at the time the statements were made. We disagree.

There is ample evidence of the existence of a conspiracy between Smith, Bailey and Namahoe, and the matters discussed in the taped conversation were clearly in furtherance of the conspiracy. It is long settled that a statement of one co-conspirator is admissible against another co-conspirator, F.R. Ev. 801(d)(2)(E); *Dutton v. Evans*, 1970, 400 U.S. 74, 81, 91 S.Ct. 210, 215, 27 L.Ed.2d 213.

Smith is correct in asserting that at the time of the conversations involved Namahoe was no longer a conspirator. On April 2 he had turned informer, and an informer is not a conspirator because he is only pretending to "agree" with the conspirators. *United States v. Rose*, 7 Cir., 1978, 590 F.2d 232, 235. However, the conspiracy remained intact with two members—Smith and Bailey.

Smith's further claim that when he left South Lake Tahoe and returned to his home in Colfax he removed himself from the conspiracy is unavailing. Withdrawal from a conspiracy requires a disavowal of the conspiracy or an affirmative action that would have defeated the purpose of the conspiracy, or "definite, decisive and positive" steps to show that the conspirator's disassociation from the conspiracy is sufficient. *United States v. Cullen*, 9 Cir., 1974, 499 F.2d 545, 547. There was no such withdrawal here.

Affirmed.