449 So.2d 921 (1984)
Charles W. JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. AT-422.
District Court of Appeal of Florida, First District.
April 25, 1984.
Rehearing Denied May 30, 1984.
*922 Michael Allen, Public Defender, and Terry P. Lewis, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Gregory C. Smith, Asst. Atty. Gen., for appellee.
NIMMONS, Judge.
The defendant was convicted of armed robbery on the basis of his involvement as a lookout while his accomplice, Michael Biggs, actually perpetrated the robbery of a convenience store clerk. Prior to trial, Biggs pled guilty to robbery with a firearm and the state agreed to recommend a sentence of a maximum of ten years and a minimum of three years in exchange for Biggs' testifying for the state at Johnson's trial. The trial judge agreed to be bound by the state's recommendation pursuant to the plea agreement. Biggs had not yet been sentenced at the time of the trial, and he became the state's key witness against Johnson at the trial.
The defendant claims that he was entitled to have the court give Florida Standard Jury Instruction 2.04(9) to the effect that the jury should consider, in weighing the credibility of a witness, whether the witness has been convicted of a crime. The trial judge, not having yet adjudicated and *923 sentenced Biggs, declined to give the charge.
There is no question that the defendant would have been entitled to the instruction if Biggs had already been sentenced. Is he less entitled because the witness was scheduled for sentencing after the trial? Barber v. State, 413 So.2d 482 (Fla. 2nd DCA 1982), indicates that this question should be answered in the negative. In Barber, the state was allowed, over objection, to elicit from the testifying defendant that a week earlier a jury had returned a verdict of guilty against him in a felony case although he had not yet been adjudicated and sentenced. The Second District stated that there was "no significant difference in probative value between a jury's finding of guilt and the entry of judgment thereon" and held that the verdict constituted a prior conviction for purposes of impeachment. 413 So.2d at 484. See also United States v. Klein, 560 F.2d 1236 (5th Cir.1977); Ehrhardt, Using Convictions to Impeach Under the Florida Evidence Code, Vol. 10 F.S.U.L.Rev. 235, 240. Although Barber and Klein involved verdicts of guilty instead of pleas of guilty as in the case at bar, we perceive no logical reason why a different result should obtain because the defendant pled guilty instead of being found guilty.
But what about the possibility that the witness may not ultimately be adjudicated of the felony if the court decides to withhold adjudication? Barber also addressed that consideration:
One may reasonably suggest that an anomaly will occur if the court ultimately chooses to withhold adjudication and place appellant on probation for the crime which the jury had previously found him guilty. Should this happen, appellant cannot thereafter be impeached by evidence concerning that crime. United States v. Georgalis, 631 F.2d 1199 (5th Cir.1980). However, the result under those circumstances would be no different than if a witness's judgment of guilt was ultimately reversed on appeal. Until such time as the reversal occurs, evidence of his judgment of guilt may be admitted for impeachment, and the fact that an appeal is pending may also be shown. Likewise, if a witness has been impeached by evidence that he has previously suffered an adverse verdict of guilt, evidence will also be admissible to show that no adjudication has yet been made. See United States v. Smith [623 F.2d 627 (9th Cir.1950)].
413 So.2d at 484.
We, therefore, hold that, for purposes of impeachment, the trial court was required to regard Biggs as having been convicted of a crime within the meaning of the Florida Evidence Code, Section 90.610, Florida Statutes (1981). The defendant was, therefore, entitled to have the jury instructed in accordance with Standard Jury Instruction 2.04(9) so that the jury would know that it was required to consider such conviction in weighing the credibility of Biggs' testimony. We are unable to conclude that the error was harmless. Biggs' testimony was critical, if not indispensable, to the state's case and his believ-ability was a crucial issue which had to be resolved by the jury upon proper instructions by the court.
The defendant also claims that the trial court reversibly erred in denying his motion for mistrial on the grounds that the prosecutor, during closing argument, expressed a personal belief in the guilt of the defendant. The remarks complained of by the defendant occurred at the beginning of the prosecutor's rebuttal argument immediately after defense counsel's concluding remarks "that, based upon the evidence before you, you have no alternative but to return a verdict of not guilty. You must have reasonable doubt." The prosecution then stated:
It's just an opportunity for me to get up and address what Mr. Cofer told you in his arguments and how the State would view those arguments. And you know, it sort of reminds me, you know, you look at different techniques, the State gets up and says: Look at the facts, put them *924 together, and the man's guilty, and that's our belief.
Defense counsel immediately moved for a mistrial, and the court denied the motion. The defendant argues that this court's holding in Reed v. State, 333 So.2d 524 (Fla. 1st DCA 1976), requires reversal. We disagree. Examination of the Reed case shows the prosecutor's above remarks to be relatively innocuous in comparison to the prosecutor's statements in Reed which prompted this court to reverse for a new trial:
Appellant was charged and found guilty of the sale of marijuana. Trial evidence disclosed a single transaction between appellant and a police officer. No evidence of any character was adduced as to appellant having been previously engaged in the sale of drugs to any other persons. However, the prosecuting attorney argued to the jury as follows:
You have got a tough decision to make in this case. It's not an easy one. The last ten years drug trafficking and drug abuse in this country has skyrocketed. It's a spreading disease. Drug abuse has spread down from colleges to high schools down to grade schools. You read in papers now about children in grade schools, grammar schools using drugs, and where do those drugs come from? From people who are willing to make money off of them.
Now, we've got a police force that is trying to make arrests on dope peddlers. We've got Courts that are willing to try dope peddlers. We've got prosecutors that are willing to prosecute dope peddlers to try to clean up this country. But the ultimate and the final responsibility, the whole system comes down to one focal point, one responsibility: Citizens of each community that sit on juries of these cases. You have the ultimate power over controlling drug abuse: Sitting on drug cases and listening to the testimony, deciding whether the State has proved its case. The welfare of the citizens of Florida and the people of Duval County, I'm contending, ask that you return a verdict of guilty in this case after considering the evidence. The decision is yours, though, and I ask you to consider it very carefully. Thank you.
In addition, the prosecuting attorney, in commenting as to defense counsel's role, argued:
Mr. Jacobson is the Defense Counsel in this case. His responsibility as the Defense Counsel is to defend someone charged with a crime. That's his duty. His responsibility in this case is to provide the best defense possible for his client, and he's doing just that: The best defense possible.
Mr. Jacobson doesn't share any guilt that his client may have; he's merely doing his job in this case... .
The prosecuting attorney also injected his personal belief into his argument by stating:
... All that the State asks for in this case is fairness. The State doesn't prosecute someone because of their religion or their race or their nationality. We prosecute them because we believe they are guilty of crimes.
[333 So.2d at 525] This court reversed because of the prejudicial effect of the above remarks. The remarks by the prosecutor in the case sub judice are not even in the same league with those quoted above from Reed.
It is often difficult to draw the line between legitimate argument regarding guilt or innocence of the accused and inappropriate urgings by the prosecutor suggesting his personal views of the defendant's culpability. The prosecutor in the instant case did not say "we prosecute them because we believe they are guilty of crimes," as was said in Reed, but instead stated, "look at the facts, put them together, and the man's guilty, and that's our belief." We think that the prosecutor's remark was no more than a suggestion of his view that the evidence indicated guilt. His remarks were certainly no worse than *925 those of the prosecutor in Adams v. State, 54 Fla. 1, 45 So. 494, 495 (1907):
The fifth assignment is founded on the refusal of the court to instruct the jury not to consider the following language used by counsel for the state in his concluding argument to the jury, to wit: "Gentlemen of the jury, in my judgment the evidence in this case amply warrants and demands a verdict of guilty of murder in the first degree, and I ask you to return a verdict of murder in the first degree against this defendant." It is doubtless improper for a prosecuting officer to state to a jury his personal opinion as to the guilt of a defendant, irrespective of the evidence in the case; but it is certainly competent for him to argue from the evidence the defendant's guilt, to show what evidence produces the conviction in him and should convince them. People v. Hess, 85 Mich. 128, 48 N.W. 181; 2 Ency.Pl. & Pr. 726. We find no error in this ruling.
But even if we were to regard his remarks as stating the prosecutor's opinion of the guilt of the defendant, irrespective of the evidence, such remarks certainly did not approach the egregious level as would entitle the defendant to a mistrial:
Juries are composed of men of sound judgment and intelligence. At least so the law requires, and it is not to be presumed that they are led astray to wrongful verdicts by the impassioned eloquence and illogical pathos of counsel.
Tyson v. State, 87 Fla. 392, 100 So. 254, 255 (1924). See also Grant v. State, 171 So.2d 361, 365 (Fla. 1965); Cummings v. State, 412 So.2d 436, 439 (Fla. 4th DCA 1982).
We have considered the other issues raised by the defendant and find them to be without merit. We would affirm but for the error first discussed in this opinion and, based thereon, reverse and remand for a new trial.
SMITH, J., concurs.
MILLS, J., concurs in part and dissents in part.
MILLS, Judge, concurring in part and dissenting in part:
I agree with the majority opinion except I would reverse the trial court's judgment on the additional ground that the trial court erred in refusing to grant Johnson's motion for a mistrial made after the prosecutor's comments expressing a personal belief as to Johnson's guilt which, in my opinion, is prohibited by Reed v. State, 333 So.2d 524 (Fla. 1st DCA 1976).