UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald TILLE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond William BURROWS, Jr.,
Defendant-Appellant.

Nos. 82–1757, 82–1758.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1984.

Decided March 29, 1984.

616

Eugene Wilson, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

James Vonasch, Seattle, Wash., for defendants-appellants.

Before WRIGHT and HUG, Circuit Judges, and SCHWARZER,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

Appellants challenge their convictions of conspiracy to violate federal anti-racketeering law. They contend that the court erred in (1) allowing Burrows' trial on an insufficient indictment and conviction on insufficient evidence, (2) admitting into evidence various coconspirator statements, (3) admitting evidence of Tille's flight, (4) not severing Tille's trial from his codefendants', and (5) instructing the jury on conspiracy.

Tille (a/k/a/ Bob Cannon) and Burrows were indicted along with two others (Satiacum and Taylor) under the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. §§ 1961–68. The indictment charged appellants with conspiracy to violate anti-racketeering law, by being associated with a racketeering enterprise and participating in the conduct of its affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c), (d).

The racketeering enterprise was a sole proprietorship owned and controlled by Robert Satiacum, known as Satiacum Enterprises. Satiacum Enterprises owned or operated, in whole or in part, many businesses, mostly within the Western District of Washington.

The conspiracy allegedly continued from 1975 to June 15, 1982. Its purpose was to obtain benefits for the defendants and the enterprise by threats and acts involving murder, arson, bribery of police officials, illegal trafficking in cigarettes, and illegal gambling. The acts of racketeering through which appellants allegedly participated in the conspiracy were these: by Burrows, involvement in illegal gambling in 1975, an agreement to commit arson, and the attempted murder of Ramona Bennett in 1978; by Tille, the 1978 attempted murder of Bennett, arson, and conducting a racketeering enterprise.

The indictment charged other crimes also, including 42 counts of illegal cigarette trafficking against Satiacum. Burrows was charged only with conspiracy to participate in the conduct of a racketeering enterprise. Tille was indicted for conspiracy, racketeering, and arson, but was acquitted of racketeering and the arson charge was dismissed.

In June 1982, local police in Gillette, Wyoming approached a residence with an arrest warrant for Tille, pursuant to the indictment filed in the Western District of Washington. While two officers spoke with two men there, a third officer saw Tille attempt to flee. The third officer found Tille hiding and asked if he were the person sought by the other officers. Tille said he was. Tille was carrying a card with the handwritten name, address, and phone number of a Seattle criminal defense lawyer.

Laviola, a former Satiacum Enterprises employee, was a prime government witness at the jury trial. He cooperated in exchange for leniency on another charge and a grant of immunity. He secretly taped conversations with Satiacum and with Burrows, and the edited tapes were presented at trial.

* Of the Northern District of California.

Taylor entered into a plea agreement, pleading guilty to arson and testifying at trial for the government. Satiacum was convicted on all charges against him, but fled after verdict and before sentencing. Tille and Burrows each were convicted only of conspiracy to participate in the conduct of the affairs of a racketeering enterprise. Tille was sentenced to 20 years imprisonment, Burrows to 10 years.

## I. PREDICATE CRIMES AND RICO CONSPIRACY

RICO makes it unlawful, among other things, for a person associated with an enterprise engaged in interstate commerce to "participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A "pattern of racketeering activity" is defined as at least two acts of racketeering activity, as defined in section 1961(1), within ten years. 18 U.S.C. § 1961(5). RICO also makes it unlawful for a person "to conspire to violate any of the provisions of subsections (a), (b), or (c) of [section 1962]." 18 U.S.C. § 1962(d).

Burrows contends that the conspiracy charge in the indictment was deficient in failing to charge him with having conspired to commit two predicate acts of racketeering. He also contends that there was no substantial evidence that he agreed to commit two predicate offenses.

The issue presented is whether section 1962(d) of RICO requires proof that a defendant agreed to commit personally two predicate offenses. Several circuits have held or assumed that a defendant's personal participation, by act or agreement, in the predicate offenses is required. *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981), *cert. denied*, —— U.S. ——, 103 S.Ct. 1249, 1250, 75 L.Ed.2d 479 (1983); *United States v. Martino*, 648 F.2d 367, 394–96, 400 (5th Cir.1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982); *United States v. Melton*, 689 F.2d

679, 683 (7th Cir.1982); *United States v. Zemek*, 634 F.2d 1159, 1172 n. 17 (9th Cir. 1980), *cert. denied*, 450 U.S. 916, 985, 101 S.Ct. 1359, 1525, 67 L.Ed.2d 341, 821, 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981) (dictum, evidence showed defendant agreed to commit several predicate offenses).

The statutory language, however, does not require proof that a defendant participated personally, or agreed to participate personally, in two predicate offenses. Read in context, section 1962(d) makes it unlawful to conspire to conduct or participate in the conduct of an enterprise's affairs, where its affairs are conducted through a pattern of racketeering activity.

■ The issue presented here is thoroughly discussed in the recent decision in *United States v. Carter*, 721 F.2d 1514, 1528–32 (11th Cir.1984). As the court there observed, Congress in enacting RICO expanded traditional conspiracy law by specifying a new objective from which the unlawfulness of a conspiracy may be established: violation of a substantive provision of RICO. *Id.* at 1530. *See also United States v. Elliott*, 571 F.2d 880, 900–05 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978);[1] *United States v. Sutherland*, 656 F.2d 1181, 1192 n. 7 (5th Cir.1981).

■ Proof of an agreement the objective of which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d). It is only when proof of such an objective is lacking that the evidence must establish the defendant's participation or agreement to participate in two predicate offenses.

We agree with the Eleventh Circuit's analysis and adopt it here. Burrows' contention must be rejected.

---

**1.** In *Elliott,* the court explained that one purpose of RICO was to escape the limitations inherent in wheel and chain conspiracies by creating a new concept, enterprise conspiracy. 571 F.2d at 900–03.

■ Burrows argues also that the evidence was insufficient to show his association with a RICO enterprise. He contends that there must be proof of actual employment or association independent of racketeering activity. That contention is inconsistent with *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), which held that RICO applies to wholly unlawful enterprises. An enterprise comprises "persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 583, 101 S.Ct. at 2528. Proof of defendant's association with the illegal activities of the enterprise is all that is required. Associated outsiders who participate in a racketeering enterprise's affairs fall within RICO's strictures. *United States v. Starnes*, 644 F.2d 673, 679 (7th Cir.), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981); *United States v. Elliott*, 571 F.2d at 903.

## II. COCONSPIRATORS' STATEMENTS

### A. Tape Recordings

Tille challenges the admissibility of tapes made by Laviola in cooperation with the government. One is of a conversation between Laviola and Satiacum in December 1981, the other of a conversation between Laviola and Burrows in February 1982.

■ The tapes were admitted as statements "by a coconspirator ... during the course of and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). The finding that the statements were in furtherance of the conspiracy will not be disturbed unless the judge could not reasonably have come to that conclusion. *United States v. Whitten*, 706 F.2d 1000, 1018 (9th Cir.1983).

■ Statements made by coconspirators after the end of a conspiracy cannot be in furtherance of its objects. *United States v. Miller*, 676 F.2d 359, 364 (9th Cir.), *cert. denied*, 459 U.S. 856, 866, 103 S.Ct. 126, 145, 74 L.Ed.2d 109, 123 (1982). The indictment charged that the conspiracy continued until June 1982. There was evidence that it was in existence in April 1982. Tille points to no evidence that he had with-

drawn from the conspiracy, no disavowal or affirmative act contrary to its purposes. *See United States v. Smith*, 623 F.2d 627, 631 (9th Cir.1980). Sufficient evidence was presented to raise a reasonable inference of existence of the conspiracy at the time of the statements. *See United States v. Layton*, 720 F.2d 548, 555 (9th Cir.1983).

■ Statements are in furtherance of the conspiracy if they are intended to further its objectives. *Id.* at 556. "Mere conversations" between coconspirators, "merely narrative declarations," and "casual admissions of culpability" are not statements in furtherance of a conspiracy. *Id.*

■ The nature of a racketeering enterprise may require continuing concealment. *See, e.g., Zemek*, 634 F.2d at 1168 (exclusion of others from tavern business and protection of illegal topless dancing and gambling). When a purpose of the conspiracy is to formulate future strategies of concealment, narrations of past events may be in furtherance of the continuing conspiracy. *United States v. Fielding*, 645 F.2d 719, 727 (9th Cir.1981).

■ The Satiacum tape included speculation that Mackey, a former employee, was cooperating with the government. Satiacum suggested that Laviola arrange for Mackey to be killed, and they discussed what story to give the authorities if they were questioned.

The Burrows conversation included speculation concerning who was cooperating with the government. Burrows suggested that Laviola consult with Satiacum about the problem of exposure. The judge's conclusion that these statements were intended to assure the continuation of the racketeering enterprise was reasonable.

Laviola's status as an informant and not a conspirator is not relevant to the admissibility of conspirators' statements to him. *Smith*, 623 F.2d at 631. Laviola's statements on the tapes were not admitted as evidence. Laviola testified at the trial.

Tille contends that the Burrows tape violated his Sixth Amendment right to con-

front Burrows who did not testify at trial. Satisfaction of the requirements for admission as a coconspirator statement does not eliminate confrontation clause questions. *United States v. Arbelaez*, 719 F.2d 1453, 1459 (9th Cir.1983); *United States v. Fleishman*, 684 F.2d 1329, 1339 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982); *United States v. Perez*, 658 F.2d 654, 660 & n. 5 (9th Cir. 1981). *Contra, United States v. Bernal*, 719 F.2d 1475, 1479 (9th Cir.1983) (in conflict with all Ninth Circuit cases, including one decided the same day; cites no Ninth Circuit authority).

■ We apply a two part test to confrontation clause issues: unavailability of the declarant and reliability suggested by the circumstances of the statement. *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980); *Perez*, 658 F.2d at 660–61. Codefendants who do not testify are considered unavailable declarants. *Arbelaez*, 719 F.2d at 1460.

■ The reliability inquiry is whether unavailability for cross-examination deprives the jury of a satisfactory basis for evaluating the truth of the statements offered. *Fleishman*, 684 F.2d at 1339. The factors considered include (1) whether the statements are assertions of past fact, (2) whether the declarant had personal knowledge concerning the crime, (3) the possibility of faulty recollection, and (4) whether the circumstances suggest that the declarant misrepresented the defendant's role. *Dutton v. Evans*, 400 U.S. 74, 88–89, 91 S.Ct. 210, 219–20, 27 L.Ed.2d 213 (1970); *United States v. Foster*, 711 F.2d 871, 881 (9th Cir.1983). All four indicators need not be present, *Fleishman*, 684 F.2d at 1339, but all four weigh in favor of admissibility here.

### B. 1976 Statements

Appellants challenge testimony concerning Satiacum's desire and attempt to have Bennett killed in 1976.

Turnipseed testified that in 1976 Satiacum offered $5,000 to have Bennett killed.

In June 1976 Turnipseed requested and was paid the $5,000. Turnipseed and Powell plotted to kill Bennett, but the plot was foiled by their discovery of armed guards at Bennett's home. Powell testified about the same June 1976 attempt on Bennett's life.

Appellants argue that the testimony of Turnipseed and Powell concerned a separate conspiracy. They contend that Satiacum's statements were inadmissible hearsay and the rest of the testimony was irrelevant and prejudicial.

■ The general test used to distinguish single from multiple conspiracies is whether there was a "single overall agreement" to act to achieve the conspiracy's objectives. *Zemek*, 634 F.2d at 1167. A single conspiracy may involve subgroups or subagreements. *Id.* A single conspiracy may be identified by examining characteristics including the nature of the scheme, identity of the participants, nature and frequency of each conspirator's involvement, and commonality of time and goals. *Id.* at 1168.

■ The nature of the scheme here was to operate the businesses controlled by Satiacum Enterprises with minimal interference from tribal and law enforcement authorities. Satiacum controlled the operation throughout.

The June 1976 incidents were virtually identical to the crime allegedly committed by Tille and Burrows early in 1978. Each was an attempted murder of Bennett, solicited by Satiacum. Both occurred while other acts of racketeering continued in pursuit of profit for the racketeering enterprise.

Appellants did not request a multiple conspiracy instruction and we do not think the evidence would support a finding of multiple conspiracies. The testimony of Turnipseed and Powell was properly admitted.

■ Burrows also challenges Dillon's testimony. Dillon testified that Satiacum said that he wanted Bennett off the Puyallup Tribal Council permanently. That comment to Dillon was not in furtherance of

the conspiracy, but was merely conversation. *See Layton,* 720 F.2d at 556.

Because Satiacum testified, the error created no confrontation problem, only an evidentiary one. *See United States v. Castillo,* 615 F.2d 878, 883 (9th Cir.1980). Reversal is not required if the error was more probably than not harmless. *Id.* Because Satiacum's desire to eliminate Bennett was shown clearly by other evidence, the error was harmless.

## III. TILLE'S OTHER CONTENTIONS

### A. Evidence of Flight

Tille challenges admission of evidence of his attempted flight at the time of his arrest, arguing that the government did not show that he was aware of the crime for which he was sought. He contends that the flight instruction was improper because no inference concerning guilt reasonably could be drawn from the flight evidence presented. *See United States v. Myers,* 550 F.2d 1036 (5th Cir.1977), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).

The evidence showed that he was in Tacoma about the same time that a local newspaper disclosed Laviola's cooperation with the government. When arrested, he carried the name and address of a Seattle criminal defense attorney. *Id.*

■ The probative value of flight evidence depends on all of the circumstances and is a jury question. *Shorter v. United States,* 412 F.2d 428 (9th Cir.), *cert. denied,* 396 U.S. 970, 90 S.Ct. 454, 24 L.Ed.2d 436 (1969). The evidence of Tille's flight was properly admitted and the flight instruction was appropriate. The evidence was sufficient to permit an inference of knowledge of the crime at issue.

### B. Severance

■ Tille argues that his trial should have been severed because at trial admissions by Burrows were presented that violated Tille's rights under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

*Bruton* bars the introduction of codefendants' post-arrest statements implicating other defendants. *Id.* at 126, 88 S.Ct. at 1622; *United States v. Brock,* 667 F.2d 1311, 1317 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983). Burrows' post-arrest statements included only denials of any knowledge, not damaging to Tille. The statements that Burrows made to Laviola on tape preceded arrest, so *Bruton* is inapplicable.

■ Tille contends also that his trial should have been severed to avoid improper rebuttal of an alibi witness. Fed.R.Crim.P. 12.1. However, the rebuttal was of witnesses who testified about his physical appearance around the time of the attempted murder. It did not concern an alibi, which would place him elsewhere than the scene of the crime charged. *See Black's Law Dictionary* 66 (5th ed. 1979). The notice of alibi requirements are irrelevant.

### C. Hearsay Objections

■ Tille challenges admission of Dillon's testimony that Rines said something that convinced him that Satiacum's threats against Bennett were serious. The references were not hearsay because Rines' statement was not offered to prove the truth of a matter that it asserted. *See* Fed.R.Evid. 801(c).

■ Tille challenges admission of Kernes' testimony that the Arnesons offered to buy the Yakima Boys Fruit Stand property as agents of Satiacum. The government contends that the statements were offered as evidence against Satiacum only.

Tille claims only evidentiary error in admitting Kernes' testimony, so reversal is not required if any error was more probably than not harmless. *See Castillo,* 615 F.2d at 883. The evidence was relatively insignificant and remotely related to Tille. If it was admitted against him, any error was harmless.

## IV. CONSPIRACY INSTRUCTIONS

■ Appellants contend that Instructions 24 and 26, explaining the conspiracy charge, were confusing and inadequate. On review, this court must view the instructions as a whole, and reverse only for abuse of discretion. *United States v. Abushi,* 682 F.2d 1289, 1299 (9th Cir.1982). The trial judge enjoys substantial latitude in formulating instructions, as long as they fairly and adequately cover the issues. *Id.*

■ Instruction 24 set out the basic elements of a conspiracy:

> The crime of conspiracy to violate the Racketeer Influenced and Corrupt Organization Act (RICO) is charged in Count I. The offense of conspiracy has three essential elements, each of which must be proved to your satisfaction beyond a reasonable doubt. These elements are:
>
> FIRST: That the conspiracy described in the Indictment was willfully formed, and was existing at or about the time alleged;
>
> SECOND: That the accused willfully became a member of the conspiracy; and
>
> THIRD: That one of the conspirators thereafter knowingly committed within the Western District of Washington at least one overt act in furtherance of some object or purpose of the conspiracy.

Appellants contend that it misled the jury by implying that these elements alone constituted the charged RICO conspiracy.

Instruction 26 listed the elements the jury was told that it must find to sustain the RICO conspiracy charge. It provided in relevant part:

> As to the first element of the crime charged in Count I of the indictment, you must find that there existed a conspiracy to be employed by or associated with an enterprise-in-fact engaged in or whose affairs affect interstate commerce, and to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.
>
> .    .    .    .    .

> Concerning the second element of Count I, you must find beyond a reasonable doubt that the accused willfully, by his words or actions, agreed to participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity, which is defined as two or more specified acts of racketeering in furtherance of the aims of the enterprise. Each defendant is charged with conspiring to participate in the enterprise through his agreement to commit at least two acts of racketeering
>
> . . . .

> The third element of Count I requires the knowing, actual commission of at least one overt act by at least one of the conspirators. . . .

Appellants contend that Instruction 26 was "confusing as to the requisite relationship of the elements 'employed by or associated with' and 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs'."

The relevant portions of the statute provide:

> (c) It shall be unlawful for any person ... associated with any enterprise engaged in ... interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .
>
> (d) It shall be unlawful for any person to conspire to violate [subsection c].

18 U.S.C. § 1962. Those subsections of the statute were included in Instruction 23.

Instruction 24 provided a general framework of the theory of conspiracy and Instruction 26 explained how the elements of a RICO conspiracy charge fit into that framework. Instruction 26 tracks the statutory language closely. As a whole, the conspiracy instructions were not misleading.

Appellants contend that Instruction 26 does not include the requirement that predicate acts of racketeering were connected by a common scheme or plan. The instruction stated that the jury must find that the accused agreed to participate in the affairs

of the enterprise "through a pattern of racketeering activity, which is defined as two or more specified acts of racketeering in furtherance of the aims of the enterprise." The requirement of a "pattern" of acts "in furtherance of the aims of the enterprise" is an adequate statement of the law.

■ Appellants argue that the court erred in rejecting Burrows' proposed conspiracy instruction. Because all significant elements of that instruction were substantially included in the instructions given, there was no reversible error. *See United States v. Lane*, 708 F.2d 1394, 1397 (9th Cir.1983).

The judgments are affirmed.