*1309
 
 DAVID R. THOMPSON, Circuit Judge:
 

 David Lee Pace appeals his conviction for robbery of the Rockwell Federal Credit Union in violation of 18 U.S.C. § 2113(a). On appeal, Pace contends: (1) the admission of the testimony of a cellmate informant to whom Pace made incriminating statements violated Pace’s sixth amendment right to counsel, (2) Pace’s fifth amendment privilege against compulsory self-incrimination was violated when he was not given
 
 Miranda
 
 warnings prior to making the incriminating statements, (3) cross-examination of two adverse witnesses was imper-missibly restricted, (4) the trial court erred in refusing to instruct the jury on the lesser-included offense of possessing stolen funds, (5) the government violated Fed.R. Crim.P. 12.1 by failing to disclose the name and address of an alibi rebuttal witness, and (6) the trial court erred in refusing to admit into evidence a newspaper television program schedule.
 

 We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 

 FACTS
 

 The Rockwell Federal Credit Union in Anaheim, California was robbed on May 21, 1984. That afternoon, Ruby Saenz, a Rockwell employee, left the Credit Union building carrying a briefcase containing $50,000 in $50 bills with which to replenish the Credit Union’s automatic teller machines. The briefcase also contained approximately $38,000 in deposits comprised primarily of personal checks, Rockwell payroll checks, and some cash. Upon reaching her car, Ms. Saenz was approached by a black male who pushed her into her car, grabbed the briefcase, and fled in a car which was parked nearby. Ms. Saenz clearly saw the assailant’s face. She also noted the getaway car’s license number. On May 23, 1984, upon viewing a photospread of potential suspects put together by the FBI, Ms. Saenz identified David Lee Pace as the robber. On the day Ms. Saenz was viewing the photographs, Pace was in Barstow, California where he purchased a 1970 Cadillac for $1,450. Payment was made with twenty-nine $50 bills.
 

 On May 24, 1984, an FBI agent filed a complaint and affidavit charging David Lee Pace with the violation of Title 18 U.S.C. § 2113(a), robbery of a credit union. On the basis of the complaint and affidavit, a federal warrant for Pace’s arrest was issued. On June 1, 1984, Pace was arrested in Reno, Nevada for an unrelated traffic violation and for possession of marijuana. One hundred $50 bills were found in the trunk of Pace’s car. Pace also had twelve $50 bills on his person. Pace was taken to the Reno City Jail where a records check revealed that he was wanted on the federal warrant for robbery of the Credit Union.
 

 At the Reno jail, Pace was placed into the only available cell. He shared this cell with prisoner Gary Axtell. That same day he confessed the robbery to Axtell. Axtell relayed this information to Detective Joe Butterman of the Reno Police Department, and Butterman passed it on to FBI Agent Frank Nenzel. Agent Nenzel then met with Axtell. Axtell told Nenzel what Pace had told him about committing the robbery. Pace was then indicted for robbery of the Rockwell Federal Credit Union and for possession of money stolen from a credit union. He was arraigned on both counts on July 5, 1984. Prior to trial, the possession of stolen money count was dismissed. Pace’s first trial ended in a mistrial when the jury was unable to reach a verdict.
 

 At Pace’s second trial, the robbery victim, Ruby Saenz, identified Pace as the robber. The getaway car, a 1975 Chevrolet, belonged to Pace’s friend, Edward Woods, who had let Pace borrow the car on the day of the robbery. Gary Axtell and Pace’s cousin, Richard Webb, both testified that Pace confessed the robbery to them and claimed to have split the booty with others. Axtell, who had a history of cooperating with law enforcement officials as an informant, had acted on his own initiative in encouraging Pace to reveal the details of the robbery. Axtell hoped that if he obtained this information and gave it to the Reno police, he could avoid being sent back to a prison where he was known as an informant. Neither the Reno police nor the FBI gave Axtell any money or other compensation, or made him any promises, in
 
 *1310
 
 exchange for his information. No one had asked Axtell to question Pace or to “keep his ears open.” Axtell had been cooperating with Reno Police Officer Butterman by giving Butterman information about other unsolved crimes, and Butterman had told Axtell that Axtell’s cooperation might benefit him in the long run.
 

 The jury found Pace guilty of robbery. He was sentenced to fourteen years in custody.
 

 DISCUSSION
 

 A.
 
 Admissibility of Jailhouse Informant’s Testimony
 

 Pace contends his sixth amendment right to counsel was violated when Axtell elicited his confession in jail, and that the confession should have been excluded from evidence at trial.
 
 See Massiah v. United States,
 
 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Pace argues that Ax-tell acted as the government’s agent in obtaining the confession. Before reaching Pace’s agency argument, however, we must first determine whether Pace’s sixth amendment right to counsel had attached at the time he confessed to Axtell.
 

 1.
 
 Sixth Amendment Right to Counsel
 

 The sixth amendment guarantees that “In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.” U.S. Const, amend. VI. Our analysis of this guarantee begins with
 
 Kirby v. Illinois,
 
 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). In
 
 Kirby,
 
 a plurality of the Court
 
 held
 
 that a person’s sixth amendment right to counsel attaches only “at or after the time that adversary judicial proceedings have been initiated against him.”
 
 Id.
 
 at 688, 92 S.Ct. at 1881. Earlier cases had held that criminal prosecution begins for sixth amendment purposes upon arraignment
 
 (Hamilton v. Alabama,
 
 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961);
 
 Powell v. Alabama,
 
 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)), preliminary hearing
 
 (Coleman v. Alabama,
 
 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970);
 
 White v. Maryland,
 
 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)), trial
 
 (Gideon v. Wainwright,
 
 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963);
 
 Johnson v. Zerbst,
 
 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)), post-indictment investigation
 
 (Massiah v. United States,
 
 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)), and pre-trial, post-indictment lineup
 
 (United States v. Wade,
 
 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)).
 
 [1]
 
 After noting these cases, the Court in
 
 Kirby
 
 listed five stages at which “adversary proceedings” begin. These are upon (1) formal charge, (2) preliminary hearing, (3) indictment, (4) information, or (5) arraignment.
 
 Kirby,
 
 406 U.S. at 689, 92 S.Ct. at 1882. The Court explained that the initiation of judicial criminal proceedings begins when “the government has committed itself to prosecute, [for it is] only then that the adverse positions of government and defendant have solidified.”
 
 Id.
 

 [2]
 

 Pace was neither indicted nor arraigned at the time he confessed to Axtell. An information had not been filed. No preliminary hearing had been held. Pace was,
 
 *1311
 
 however, in custody, the FBI had filed a complaint against him, together with an affidavit in support of that complaint, and a warrant for his arrest had been issued. The question we are called upon to answer is whether under these circumstances Pace’s sixth amendment right to counsel had attached. In order to answer this question, it is necessary to examine the purpose of the sixth amendment right to counsel. In
 
 United States v. Gouveia,
 
 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), the Court stated:
 

 We have recognized that the “core purpose” of the counsel guarantee is to assure aid at trial,' “when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor.”
 
 United States v. Ash,
 
 413 U.S. 300, 309 [93 S.Ct. 2568, 2573, 37 L.Ed.2d 619] (1973). Indeed, the right to counsel
 

 “embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel.”
 
 Johnson v. Zerbst,
 
 304 U.S. 458, 462-463 [58 S.Ct. 1019, 1022-1023, 82 L.Ed. 1461] (1938).
 

 Although we have extended an accused’s right to counsel to certain “critical” pretrial proceedings,
 
 United States v. Wade,
 
 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967), we have done so recognizing that at those proceedings, “the accused [is] confronted just as at trial by the procedural system, or by his expert adversary, or by both,” (citation omitted), in a situation where the results of the confrontation “might well settle the accused’s fate and reduce the trial itself to a mere formality.” (citation omitted).
 

 Id.
 
 at 188-89, 104 S.Ct. at 2298.
 

 Although
 
 Gouveia
 
 involved the placement of prison inmates into administrative detention, the Court stated that the sixth amendment right to counsel does not attach upon arrest.
 
 Gouveia,
 
 467 U.S. at 190, 104 S.Ct. at 2298-99. The Court in
 
 Gouveia
 
 reversed this circuit’s decision in which, by analogy to the sixth amendment speedy trial guarantee, we had held that the right to counsel may attach as early as the time of arrest (and hence at the time of administrative detention).
 
 United States v. Gouveia,
 
 704 F.2d 1116, 1120-25 (9th Cir.1983),
 
 rev’d,
 
 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). The Court in its
 
 Gouveia
 
 decision distinguished cases dealing with the sixth amendment “speedy trial” guarantee from those dealing with the sixth amendment right to counsel. While the sixth amendment right to a speedy trial may attach before indictment or as early as the time a defendant is “accused”
 
 (i.e.,
 
 at time of arrest),
 
 see United States v. Marion,
 
 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), as the Court stated in
 
 Gouveia:
 

 [W]e have never held that the right to counsel attaches at the time of arrest. This difference [between the Sixth Amendment Right to Counsel and speedy trial guarantee] is readily explainable, given the fact that the speedy trial right and the right to counsel protect different interests. While the right to counsel exists to protect the accused during trial-type confrontations with the prosecutor, the speedy trial right exists primarily to protect an individual’s liberty interest, “to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.”
 

 Gouveia,
 
 467 U.S. at 190, 104 S.Ct. at 2298 (citations omitted).
 

 In
 
 United States v. Zazzara,
 
 626 F.2d 135 (9th Cir.1980), which pre-dated
 
 Gouv-eia,
 
 we held that the right to counsel does not attach until the defendant has been
 
 arrested
 
 or
 
 indicted. Id.
 
 at 138. We stated that, until either of these events has occurred, the defendant is not an “accused” and thus the right to counsel has not arisen.
 
 Gouveia
 
 teaches, however, that the right to counsel under the sixth amend
 
 *1312
 
 ment does not attach at the time of arrest. Our
 
 Zazzara
 
 decision, therefore, is no longer controlling on this point. However, by the time Pace confessed to Axtell, events in addition to his arrest had occurred. He had been charged with robbery by the filing of a complaint by the FBI and a warrant for his arrest had been issued. The question whether these circumstances, coupled with a defendant’s arrest, are sufficient to trigger the sixth amendment right to counsel was answered by the Second Circuit in
 
 United States v. Duvall,
 
 537 F.2d 15 (2d Cir.),
 
 cert. denied,
 
 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). In that case the court stated:
 

 We see no reason in principle why the filing of a complaint should be deemed to give rise to a right to counsel immediately upon arrest pursuant to warrant. As said in 8 Moore, Federal Practice H 3.02 (Cipes, 1975 rev.), “The principal function of a complaint ‘is as a basis for an application for an arrest warrant.’ ” There is no reason in the nature of things why an arrest warrant should need to be predicated on a complaint rather than simply an affidavit as in the case of a search warrant, F.R.Cr.P. 41; indeed Rule 4 permits the showing of probable cause for arrest to be made either in the complaint or in an affidavit or affidavits filed with the complaint. The requirements of Rule 5 bear equally on “an officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant.” We perceive no reason why Sixth Amendment rights should accrue sooner in the former instance than in the latter. Furthermore to hold that the accrual of the right to counsel is accelerated by use of the warrant procedure would tend to discourage this whereas the policy should be to encourage it.
 

 Duvall,
 
 537 F.2d 15, 22.
 

 Adversary judicial proceedings were not initiated against Pace when the FBI filed its complaint and affidavit, nor when the warrant for his arrest was issued. The issuance of the warrant, based upon the complaint and affidavit, merely determined that there was probable cause for Pace’s arrest. Fed.R.Crim.P. 4. Pace’s prosecution had not commenced at this point. Under Fed.R.Crim.P. 7, a federal offense not punishable by death “shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information.” Pace did not waive indictment. His prosecution commenced when the indictment was handed down. At this point a “formal charge” was made against him.
 
 See Favors v. Eyman,
 
 466 F.2d 1325, 1328 (9th Cir.1972). It was then “that the government ha[d] committed itself to prosecute, and only then that the adverse positions of government and defendant ha[d] solidified.”
 
 Kirby,
 
 406 U.S. at 689, 92 S.Ct. at 1882.
 

 We hold that Pace’s sixth amendment right to counsel did not attach upon the filing of the complaint by the FBI, the issuance of the warrant of arrest, or Pace’s arrest.
 
 [3]
 
 Therefore, at the time Pace confessed his robbery to Axtell, Pace’s sixth amendment right to counsel had not yet attached. Having resolved this foundational issue, we do not reach the issue whether, in the context of Pace’s sixth amendment right to counsel, Axtell was acting as a government agent at the time Pace made his confession. We consider this agency argument in the context of Pace’s fifth amendment claim.
 

 2.
 
 Fifth Amendment Privilege Against Self-Incrimination
 

 Pace argues that his rights under the fifth amendment were violated when Axtell elicited his confession without first giving him
 
 Miranda
 
 warnings. The fifth amendment privilege against compulsory
 
 *1313
 
 self-incrimination draws with it the right to remain silent and the right to have counsel present during custodial interrogation.
 
 See Miranda v. Arizona,
 
 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966). The
 
 Miranda
 
 Court characterized custodial interrogation as questioning initiated by law enforcement officers after a person has been taken into custody “or otherwise deprived of his freedom of action in any significant way.”
 
 Id.
 
 at 477, 86 S.Ct. at 1629. Thus, although Pace’s sixth amendment right to counsel had not attached when he confessed to Axtell, his fifth amendment privilege against compulsory self-incrimination had attached. Pace argues that Axtell was the government’s agent when he obtained Pace’s confession, and that Pace was not given
 
 Miranda
 
 warnings before making the incriminating statements.
 

 Pace did not raise his fifth amendment
 
 Miranda
 
 argument in the district court. In addressing Pace’s sixth amendment argument, however, the district court found that Axtell was not the government’s agent when he obtained Pace’s confession. This finding is not clearly erroneous. There was no pre-existing agreement between Axtell and the Reno police or the FBI, Axtell had acted on his own initiative in obtaining Pace’s confession, and there was no
 
 quid pro quo
 
 underlying Axtell’s relation with the government.
 
 See United States v. Taylor,
 
 800 F.2d 1012, 1016 (10th Cir.1986),
 
 cert. denied,
 
 — U.S. —, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987). Since Ax-tell was not the government’s agent, the government did not participate in any custodial interrogation in obtaining Pace’s confession. Pace’s fifth amendment privilege against compulsory self-incrimination was not violated, regardless of whether or not he was given
 
 Miranda
 
 warnings before he confessed to Axtell.
 
 [4]
 

 B.
 
 Limitation of Cross-Examination
 

 Pace contends his cross-examination of two of the prosecution witnesses was im-permissibly limited. During Pace’s cross-examination of Edward Woods, Pace sought to introduce evidence that Woods had a twelve year old kidnapping conviction.
 
 [5]
 
 During cross-examination of Axtell, Pace sought to impeach Axtell’s credibility by establishing a pattern of cooperation between Axtell and law enforcement authorities.
 

 We review the district court’s limitation of the scope of cross-examination for abuse of discretion.
 
 United States v. Domina,
 
 784 F.2d 1361, 1365 (9th Cir.1986),
 
 cert. denied,
 
 — U.S. —, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987);
 
 United States v. Kennedy,
 
 714 F.2d 968 (9th Cir.1983),
 
 cert. denied,
 
 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984).
 

 Regarding witness Woods, although there was extensive argument before trial about the admissibility of Woods’ prior kidnapping conviction, the trial court ultimately ruled that the evidence was admissible. In fact, the jury learned of Woods’ kidnapping conviction upon direct examination of Woods by the prosecution. Pace’s counsel did not thereafter seek to elicit further evidence regarding Woods’ kidnapping conviction upon cross-examination. As to the contention that cross-examination of Woods was unduly restricted, therefore, the issue is moot.
 

 As to Axtell, the district court did not abuse its discretion in precluding Pace from examining Axtell concerning his cooperation with law enforcement authorities.
 
 *1314
 
 These facts were already in evidence. The jury had learned that Axtell had prior convictions. The jury also had heard that Ax-tell had previously cooperated with law enforcement authorities, and that he hoped to receive help from the government in the form of a transfer to another prison in exchange for providing information about Pace. Given the evidence which was already before the jury, the trial court’s limitation of further examination of Axtell on these subjects was well within its discretion.
 
 See United States v. Feldman,
 
 788 F.2d 544, 554 (9th Cir.1986),
 
 cert. denied,
 
 — U.S. —, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987) (“The trial court does not abuse its discretion as long as the jury receives sufficient information to appraise the biases and motivations of the witness.”).
 

 C.
 
 Lesser-included Offense Jury Instruction
 

 Pace contends he was entitled to a jury instruction on the lesser-included offense of possessing stolen funds under 18 U.S.C. § 2113(c). Pace argues that the court’s decision not to give the proposed instruction was prejudicial “because the jury was then compelled to decide that the Appellant was in fact the perpetrator.” We do not agree.
 

 We review the district court’s formulation of jury instructions for abuse of discretion.
 
 See United States v. Wellington,
 
 754 F.2d 1457, 1463 (9th Cir.),
 
 cert. denied,
 
 474 U.S. 1032, 106 S.Ct. 592, 593, 88 L.Ed.2d 573 (1985).
 
 See also United States v. Echeverry,
 
 759 F.2d 1451, 1455 (9th Cir.1985) (“So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions ... is a matter of discretion.”). Pace is entitled to his proffered instruction only if his theory of the case is “supported by law and has some foundation in the evidence.”
 
 Id.
 

 The lesser-included offense doctrine derives from Fed.R.Crim.P. 31(c) which provides that a criminal defendant may be found guilty of an offense “necessarily included” in the offense charged. In
 
 United States v. Johnson,
 
 637 F.2d 1224, 1233-34 (9th Cir.1980), we set forth a two-part test for determining whether a particular defendant is entitled to a lesser-included offense instruction. First, the defendant must identify the lesser-included offense. Second, the defendant must demonstrate that a rational jury could find the defendant guilty of the lesser offense but not the greater.
 
 See United States v. Brown,
 
 761 F.2d 1272, 1277 (9th Cir.1985).
 

 The evidence against Pace amply supported his robbery conviction, the greater offense. Ruby Saenz, the robbery victim, identified Pace as the robber. Two witnesses, Axtell and Webb, testified that Pace confessed to the robbery. Two other witnesses, Rubio, a Rockwell employee, and Woods, linked Pace to the car identified as the getaway car. The evidence that Pace had twelve $50 bills on his person when arrested and one hundred $50 bills in the trunk of his car is not sufficient, without reference to the evidence linking him to the robbery, to support his conviction of knowing possession of money stolen from the Credit Union. A rational jury could not have convicted Pace of possession of the stolen money without relying on the evidence which established his guilt of the robbery. Thus, a rational jury could not have found Pace guilty of possessing stolen money and not guilty of robbing the Credit Union.
 

 D.
 
 Federal Rule of Criminal Procedure 12.1(b)
 

 Pace contends the government’s failure to disclose the name and address of alibi rebuttal witness Jerrilyn Woods violated Fed.R.Crim.P. 12.1(b). According to Pace, the district court’s refusal to sanction this nondisclosure by excluding the testimony of Jerrilyn Woods constituted reversible error. We disagree.
 

 The trial court’s decision whether to exclude or admit testimony of an undisclosed government witness under Rule 12.1(b) is reviewed for abuse of discretion.
 
 See United States v. Portillo,
 
 633 F.2d 1313, 1324 (9th Cir.1980),
 
 cert. denied,
 
 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981). The court did not abuse its discretion in
 
 *1315
 
 refusing to exclude this evidence. As explained hereafter, Ms. Woods was not a witness whose identity the government was required to disclose under Rule 12.1(b).
 

 Fed.R.Crim.P. 12.1(a) requires the defendant, upon written demand by the government, to give the government notice of the defendant’s intention to offer an alibi defense, along with the names and addresses of any witnesses upon whom he intends to rely to establish his alibi. Rule 12.1(b) requires reciprocal disclosure by the government of the names and addresses of any witnesses the government intends to rely upon to establish the defendant’s presence at the scene of the crime or to rebut the testimony of any of the defendant’s alibi witnesses. However, Rule 12.1(b) does not require disclosure of
 
 all
 
 government witnesses.
 
 See, e.g., United States v. Tille,
 
 729 F.2d 615, 622 (9th Cir.),
 
 cert. denied,
 
 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984) (testimony concerning the defendant’s physical appearance around the time of the crime is not rebuttal evidence within the meaning of Rule 12.1).
 

 In the present case, Jerrilyn Woods testified only that she saw Pace at her house on the morning of the robbery and that she had not seen her brother Edward’s car (the getaway car) since that time. Other witnesses testified that Edward Woods’ car was used in the robbery and that Pace had borrowed the car the morning of the robbery. Jerrilyn Woods’ testimony therefore indirectly linked Pace with the car used in the robbery but did not establish Pace’s presence at the scene of the crime, nor did this testimony rebut an alibi defense. Therefore, Jerrilyn Woods was not a witness whose disclosure was required by Rule 12.1(b).
 
 See Tille,
 
 729 F.2d at 622.
 

 E.
 
 Exclusion of Television Program Schedule
 

 Pace contends the district court’s refusal to admit a television program schedule into evidence was error. Pace claims the program schedule was relevant to show that he could not have been at the scene of the crime at the time of the robbery. The program schedule was apparently offered to refresh the memory of Pace’s sister concerning what “soap opera” she was watching on television when Pace returned to her home the afternoon of the robbery.
 

 Pace’s sister, however, did not know what show she was watching when Pace returned to her home the afternoon of the robbery. She testified that even if she were shown a television schedule for the programs that day, her recollection would not have been refreshed. Any relevance the television program schedule may have had was remote and speculative at best. The district court did not abuse its discretion in refusing to admit the schedule into evidence.
 
 See United States v. Burreson,
 
 643 F.2d 1344, 1349 (9th Cir.),
 
 cert. denied,
 
 454 U.S. 830, 847, 102 S.Ct. 125, 165, 70 L.Ed.2d 106, 135 (1981).
 
 See also United States v. Hooton,
 
 662 F.2d 628, 636 (9th Cir.1981),
 
 cert. denied,
 
 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982) (trial judge has broad discretion to exclude evidence).
 

 CONCLUSION
 

 At the time Pace confessed to Axtell that he had robbed the Credit Union, Pace’s sixth amendment right to counsel had not attached. The trial court did not err in admitting Axtell’s testimony of Pace’s confession over Pace’s sixth amendment claim. Pace’s fifth amendment privilege against compulsory self-incrimination was not violated when he confessed to Axtell, because Axtell was not a government agent and Pace was not subjected to “custodial interrogation” within the meaning of
 
 Miranda.
 
 Pace’s challenge to the limitation of cross-examination of the witness, Woods, is moot. Pace’s cross-examination of Axtell was not impermissibly restricted because the facts Pace sought to bring out were already before the jury. Pace was not entitled to a lesser-included offense jury instruction because a rational jury would not have convicted Pace of possession of stolen funds and acquitted him of robbery. The government did not violate Fed.R. Crim.P. 12.1 by failing to disclose the name and address of witness Jerrilyn Woods because she was not a witness whose identity
 
 *1316
 
 the government was required to disclose by Rule 12.1. The trial court did not abuse its discretion in excluding as irrelevant the proffered television program schedule.
 

 AFFIRMED.
 

 [1]
 

 . In
 
 United States v. Wade,
 
 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Court held that the sixth amendment right to counsel attached at "critical stages" in the prosecution and extended to pre-trial, post-indictment lineups because of "the accused’s inability effectively to reconstruct at trial any unfairness that occurred."
 
 Id.
 
 at 231-32, 87 S.Ct. at 1934. According to
 
 Wade,
 
 critical stages are those occasions in a criminal proceeding when the presence of an attorney is necessary to assure the defendant’s right to a fair trial.
 
 Id.
 
 at 226-27, 87 S.Ct. at 1931-32.
 

 [2]
 

 .
 
 The holding in
 
 Kirby
 
 that a person's sixth amendment right to counsel attaches after "adversary judicial proceedings” have been initiated against him has been preserved and reemphasized in several later cases.
 
 See Moran v. Bur-bine,
 
 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986);
 
 Maine v. Moulton,
 
 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985);
 
 see generally United States v. Gouveia,
 
 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (describing cases that confirm Kirby);
 
 cf. Escobedo v. Illinois,
 
 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) (decided prior to
 
 Kirby
 
 and subsequently limited as relating to the fifth amendment privilege against self-incrimination);
 
 Johnson v. New Jersey,
 
 384 U.S. 719, 729, 86 S.Ct. 1772, 1882, 16 L.Ed.2d 882 (1966) (The "prime purpose” of
 
 Escobedo
 
 was not to vindicate the constitutional right to counsel as such, but, like
 
 Miranda,
 
 "to guarantee full effectuation of the privilege against self-incrimination.”).
 

 [3]
 

 . Because prosecution under
 
 state
 
 law is commenced at different times depending upon the criminal procedure statutes of the particular state, we limit our holding to federal criminal prosecutions.
 
 See Moore v. Illinois,
 
 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), in which the Supreme Court, after recognizing that
 
 under Illinois law
 
 the prosecution was commenced when the victim's complaint was filed in court, noted that "adversary judicial criminal proceedings” were initiated when the ensuing preliminary hearing occurred.
 
 Id.
 
 at 228, 98 S.Ct. at 464.
 

 [4]
 

 . Pace cites
 
 United States
 
 v.
 
 Walther,
 
 652 F.2d 788 (9th Cir.1981) and
 
 United States v. Miller,
 
 688 F.2d 652 (9th Cir.1982) in support of his agency argument. These cases are inapposite. The issue in both cases was whether a search conducted by a private citizen should be considered governmental action under the fourth amendment. The significant amount of participation or encouragement by the government which both cases emphasize is lacking in this case.
 

 [5]
 

 . In his Opening Brief, Pace asserts that he sought to introduce a prior kidnapping conviction of witness Webb. Pace’s argument on this issue apparently is confused. The record clearly shows that Pace sought to introduce evidence of a kidnapping conviction of Edward Woods, not Webb. Thus, we assume that Woods was the target of the impeachment evidence.