996 F.2d 1220
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antoine J. SHIPP, Defendant-Appellant.
 No. 92-2497.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 23, 1993.
Decided May 28, 1993.
 
 Before POSNER and MANION, Circuit Judges, and WOOD, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 Defendant Antoine J. Shipp was found guilty of violating 18 U.S.C. § 922(g)(1), unlawful possession of a firearm by a convicted felon, after a one-day jury trial on April 1, 1992. Defendant was sentenced to a prison term of 235 months on June 12, 1992. Defendant filed a notice of appeal on June 19, 1992. On appeal, defendant contests the admission into evidence of a radio dispatch heard by a police officer, statements made by defendant to police officers in violation of his Fifth Amendment right against self-incrimination, and a statement to a federal agent in violation of his Sixth Amendment right to counsel. We affirm the conviction and sentence of defendant.
 
 I. BACKGROUND
 
 2
 Defendant's trouble began on the evening of November 26, 1991, when Sergeant Don Wallace of the Venice police department overheard a radio dispatch from another officer to the dispatcher that an unnamed civilian had complained to the officer that Shipp had been firing a gun earlier that evening. When Sergeant Wallace was out on routine patrol in the early morning of November 27, he stopped a car that he had stopped once before whose driver did not have car insurance. On November 27, the same car was coming from the same known drug location as the earlier stop when Wallace decided to check the driver's insurance again. After Wallace pulled the car over, while asking the driver for her license and insurance information, Wallace noticed Shipp sitting in the front passenger seat. There was a third unidentified person in the rear seat as well.
 
 
 3
 Because Wallace had heard the radio dispatch concerning Shipp earlier that evening, he returned to his police car and called for back-up. Within minutes Venice police officer Cantrell Patterson arrived at the scene. Both officers approached the stopped car, and Wallace told Shipp that he had heard Shipp had been firing a gun earlier that evening. Shipp denied that he had a gun and told the officers they could search him. Shipp got out of the car, and Wallace began to pat him down. Shipp prevented Wallace from searching his front, a struggle resulted, and Shipp tried to run away. Two other police officers arrived around this time.
 
 
 4
 As Shipp was lying on the ground, he prevented the officers from searching the front of his pants. At this point, newly arrived officer Richard Ballew told Shipp that dire consequences would happen if Shipp did not relent and let his front be searched. Shipp had locked one of his arms while the other was behind his back in a hand-cuff. When Wallace was able to remove a bag from the front of Shipp's pants, he found a loaded gun in the bag.
 
 
 5
 Ballew put Shipp in one of the police cars when Shipp called him back to the car. Ballew told Shipp not to say anything but Shipp continued and said he was not trying to hurt anyone but that he had the gun for protection because someone was after him. As Shipp was brought to the local police station, he told Patterson, the transporting officer, that he was not trying to hurt the officers with the gun, he was just trying to get rid of it.
 
 
 6
 Special Agent Donald Veal, Jr. was brought in to the case in December 1991 while Shipp was in state custody on a state gun charge. On January 7, 1992, Veal obtained a federal criminal complaint and arrest warrant based upon the November 27 incident. Veal took custody of Shipp the next day and brought him to the federal courthouse in East St. Louis. While awaiting Shipp's initial appearance in a magistrate's court, Veal talked to Shipp in a holding cell. Veal explained he had a warrant for Shipp's arrest and the charges Shipp was facing. Veal gave Shipp his Miranda warnings according to a form which defendant read and then signed. Shipp then waived his right to an attorney and signed the form stating as such. Each time, defendant stated he understood his rights and was willing to waive them. Shipp told Veal the gun was Darren Lott's and that he had let Lott use another friend's van. The gun was being held by Shipp as collateral for the van. When Shipp was arrested, he had been out looking for the van.
 
 
 7
 Defendant had his initial appearance before a magistrate on January 8, 1992, and a preliminary and detention hearing on January 10, 1992. On January 23, 1992, a grand jury returned a one-count indictment against Shipp for possessing the gun in violation of 18 U.S.C. § 922(g)(1). Defendant moved to suppress evidence concerning the radio dispatch and his several statements to officers Ballew and Patterson and Special Agent Veal on March 19, 1992. The district judge denied the motion and admitted the evidence at trial.
 
 II. ANALYSIS
 A. Hearsay Evidence Objection
 
 8
 The first piece of disputed evidence concerns the radio report overheard by Sergeant Wallace. Defendant objects to the evidence on hearsay grounds under Fed.R.Evid. 801 claiming the evidence is really double hearsay and should not be admitted because it is an out-of-court statement offered for the truth of the matter asserted. The government contends, however, that the evidence was not offered for the truth of the matter asserted, but instead to explain and justify the officers' actions when confronting Shipp on November 27, 1991. The government wanted the jury to understand why the first officer called for back-up and wanted to search Shipp. The district court found the evidence was not hearsay, or double hearsay, because it was not being offered for the truth of the matter asserted.
 
 
 9
 We will not reverse a district court's evidentiary ruling unless we find the court abused its discretion in admitting the evidence. United States v. Bigelow, 914 F.2d 966, 971 (7th Cir.1990), cert. denied, 111 S.Ct. 1077 (1991). Trial judges have broad discretion, and we give their evidentiary rulings special deference without regard to how we may have ruled on the admission in the first instance. United States v. Mokol, 939 F.2d 436, 438 (7th Cir.1991).
 
 
 10
 Not all out-of-court statements are inadmissible under Fed.R.Evid. 801. Out-of-court statements are inadmissible as hearsay only when offered for the truth of the matter asserted. Fed.R.Evid. 801(c); Anderson v. United States, 417 U.S. 211, 219 (1974). Thus if a prior statement is offered only to prove that it was made and not to prove the truth of the matter asserted, it is not excludable as hearsay. Id. at 220 & n. 8.
 
 
 11
 It was not an abuse of discretion for the court to admit evidence of the radio dispatch for the purpose of explaining the officers' conduct. E.g. United States v. Lazcano, 881 F.2d 402, 407 (7th Cir.1989). Of the three occupants in the stopped car, only Shipp got out of the car and was searched. A juror might reasonably wonder why only Shipp was searched. Indeed at trial, defense counsel did ask the officers several times if any of the other occupants in the car were searched or arrested that night. But the prosecutor did not exploit the non-hearsay statements, and defendant did not even ask for a limiting instruction. See Martinez v. McCaughtry, 951 F.2d 130, 133-34 (7th Cir.1991). The district court did not abuse its discretion in admitting the non-hearsay evidence nor in ruling it was not unduly prejudicial under Fed.R.Evid. 403.
 
 B. Fifth Amendment Objection
 
 12
 Shipp objects to the admission of his statements to officer Ballew when he was sitting in the police car and to officer Patterson when he was being taken to the station house. Shipp contends these statements were obtained in violation of his Fifth Amendment right not to incriminate himself. The government argues the statements were spontaneously given by Shipp without custodial interrogation.
 
 
 13
 The Fifth Amendment does not bar the admission of volunteered statements which are freely given. Miranda v. Arizona, 384 U.S. 436, 478 (1966). When a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue. See United States v. Thoma, 726 F.2d 1191, 1197-98 (7th Cir.), cert. denied, 467 U.S. 1228 (1984).
 
 
 14
 The district court found Shipp's statements to the officers were spontaneously given. The court was concerned that the officers did not immediately give Shipp his Miranda warnings after he was subdued and arrested, but the court did not doubt the statements were voluntarily made. Any failure to give Miranda warnings would require suppression of statements only if they were obtained as a result of interrogation of the defendant while he was in custody. Shipp was not interrogated by the officers when he made his statements though he surely was in custody.
 
 
 15
 We do not find the district court's denial of the defendant's motion was clearly erroneous. The officers' testimony about the circumstances concerning the voluntariness and spontaneity of the statements was uncontroverted by defendant. See United States v. Monzon, 869 F.2d 338, 342 (7th Cir.), cert. denied, 490 U.S. 1075 (1989); United States v. Laughlin, 772 F.2d 1382, 1386 (7th Cir.1985); United States v. Rodgers, 755 F.2d 533, 546 (7th Cir.), cert. denied, 473 U.S. 907 (1985). Defendant's volunteered statements should not have been barred by the Fifth Amendment in this instance. See Miranda, 384 U.S. at 478.
 
 C. Sixth Amendment Objection
 
 16
 The last issue raised on appeal by Shipp concerns the statement he gave to Special Agent Veal of the Bureau of Alcohol, Tobacco, and Firearms. Shipp claims his Sixth Amendment right to counsel was violated when Veal questioned Shipp in the absence of Shipp's lawyer for his state case. There is no evidence in the record that Shipp in fact had a lawyer for his state case, only the statements by his lawyer for the federal charge. There also is no evidence that Veal knew Shipp had a lawyer; Veal testified that he did not know if Shipp had a lawyer for the state case. Shipp never told Veal he had a lawyer when he spoke with him on January 8, and Shipp waived his right to an attorney after having been given Miranda warnings.
 
 
 17
 The district court admitted Shipp's statement because he found Veal did not know if Shipp had a lawyer and because Shipp failed to tell Veal if he had a lawyer before waiving his right to have a lawyer present. The court found no other basis for excluding the statement.
 
 
 18
 The district court's denial of the motion to suppress was not clearly erroneous. Shipp had no Sixth Amendment right to counsel at the time he was questioned by Veal either because of the fact that he may have had a lawyer for his state case or based upon the federal complaint and arrest warrant. There is no evidence that Shipp had a lawyer which Veal knew and disregarded before obtaining Shipp's waiver. And Shipp's Sixth Amendment right to counsel had not yet begun although the questioning was after a criminal complaint and arrest warrant had been obtained but before any preliminary hearing. United States v. Gouveia, 467 U.S. 180, 190 (1984) (dictum); United States v. Langley, 848 F.2d 152, 153 (11th Cir.), cert. denied, 488 U.S. 897 (1988); United States v. Pace, 833 F.2d 1307, 1311-12 (9th Cir.1987), cert. denied, 486 U.S. 1011 (1988); United States v. Duvall, 537 F.2d 15, 22 (2d Cir.), cert. denied, 426 U.S. 950 (1976). The government proved Shipp's waiver of his Fifth Amendment right to counsel during custodial interrogation was knowingly and intentionally done. See Miranda v. Arizona, 384 U.S. 436, 475 (1966).
 
 III. CONCLUSION
 
 19
 Because we do not find any of the alleged evidentiary rulings were in error, we AFFIRM the conviction and sentence of defendant Shipp.